**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HARALD E. MARTINSON, II,
Plaintiff-Appellant,

and

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
Plaintiff,

No. 96-1555

v.

KINNEY SHOE CORPORATION,
Defendant-Appellee.

EPILEPSY FOUNDATION OF AMERICA;
DISABILITY RIGHTS COUNCIL OF
GREATER WASHINGTON, D.C.,
Amici Curiae.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
Plaintiff-Appellant,

and

HARALD E. MARTINSON, II,
Plaintiff,

No. 96-1556

v.

KINNEY SHOE CORPORATION,
Defendant-Appellee.

EPILEPSY FOUNDATION OF AMERICA;
DISABILITY RIGHTS COUNCIL OF
GREATER WASHINGTON, D.C.,
Amici Curiae.

Appeals from the United States District Court
for the Western District of Virginia, at Harrisonburg.
James H. Michael, Jr., Senior District Judge.
(CA-94-69-H)

Argued: December 2, 1996

Decided: January 21, 1997

Before RUSSELL, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Russell and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Karen Marie Moran, Office of General Counsel, EQUAL
EMPLOYMENT OPPORTUNITY COMMISSION, Washington,
D.C., for Appellant EEOC; Jesse James Richardson, Jr., LAW
OFFICES OF JESSE J. RICHARDSON, JR., P.C., Winchester, Vir-
ginia, for Appellant Martinson. Alexander Neal Barkus, HUNTON &
WILLIAMS, Washington, D.C., for Appellee. **ON BRIEF:** C. Greg-
ory Stewart, General Counsel, Gwendolyn Young Reams, Associate
General Counsel, Vincent J. Blackwood, Assistant General Counsel,
Office of General Counsel, EQUAL EMPLOYMENT OPPORTU-
NITY COMMISSION, Washington, D.C., for Appellant EEOC.
E. Eugene Gunter, Winchester, Virginia, for Appellant Martinson.
Thomas J. Flaherty, David A. Walsh, Elizabeth C. Smith, HUNTON
& WILLIAMS, McLean, Virginia, for Appellee. Robert A. Long, Jr.,
COVINGTON & BURLING, Washington, D.C.; Alexandra K. Finu-
cane, Vice President for Legal Affairs, THE EPILEPSY FOUNDA-
TION OF AMERICA, Landover, Maryland; Marc Fiedler, President,
THE DISABILITY RIGHTS COUNCIL OF GREATER WASHING-
TON, D.C., Washington, D.C., for Amici Curiae.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

The district court concluded that an employer did not violate the Americans with Disabilities Act, 42 U.S.C. #8E8E # 12101-12213 (1994), when it discharged a shoe salesman who suffered from epilepsy. EEOC v. Kinney Shoe Corp., 917 F. Supp. 419 (W.D. Va. 1996). The district court's analysis was flawed in some respects but much of its reasoning and the court's ultimate holding were correct. Accordingly, we affirm.

I.

Because the district court fully set forth the facts, id. at 422-24, we relate here only those necessary to understand our holding.

Harald Martinson worked for Kinney as a shoe salesman in a Winchester, Virginia shopping mall at various times between 1989 and 1992. In January 1992, Kinney rehired Martinson as a full-time salesperson. Martinson suffers from epilepsy, which was first diagnosed in 1967. During previous periods of employment with Kinney, Martinson had experienced seizures at work, and Kinney rehired him with the knowledge that seizures could occur. The seizures that Martinson experienced during the work day were usually similar to fainting spells; his body would collapse to the ground and he would appear to be sleeping. He would remain in this state for five to ten minutes, after which he would "awake" and take a twenty to forty-five minute break from work to compose himself. Other than "a bump or a scratch," Martinson has never injured himself or anyone else during any of his seizures over the past twenty-nine years. Furthermore, Martinson has not requested any accommodation other than tolerance of his seizures.

Kinney supervisors acknowledged that Martinson was a good salesman; he received two "Employee of the Month" awards, one just before his final dismissal. They also admitted that his "sales book" was "better than average." One of his managers testified that but for the seizures, Martinson was fully capable of performing his job; he

3

was a reliable employee and had very good knowledge of the merchandise. Moreover, although Martinson's supervisors disagreed about this, one conceded that Martinson's seizures did not cause Kinney to lose customers.

Between January and July 1992, Martinson "guess[ed]" that he had approximately five seizures at work but he explained that he did not remember his seizures and so had to rely on others as to their occurrence; Kinney maintained that he had approximately sixteen. In July 1992, a Kinney manager warned Martinson that he would be fired if he "had another seizure." When Martinson did have another seizure, Kinney discharged him. On Martinson's employee separation report, Kinney District Sales Manager, Allen Bosworth, wrote that Martinson's discharge was attributable to "[s]eizures in store, sales floor, and stockroom. Inability to control timing of same."**1**

The EEOC initiated this suit against Kinney on Martinson's behalf, and Martinson intervened. The district court held that while there were material issues of fact with regard to whether Martinson was qualified to do his job, Kinney was entitled to summary judgment because it had not engaged in "unlawful discrimination." Id. at 430.

II.

Title I of the Americans with Disabilities Act (ADA) provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (1994). Therefore, to establish a prima facie case of discriminatory firing, a plaintiff

---

**1** While employed by Kinney, Martinson broke a display table and shoe polish rack by falling on them during seizures. In addition, on one occasion, a supervisor discovered him lying on the floor in the stockroom with a lit cigarette on his chest and on another occasion, a supervisor found him supine behind the sales counter holding a charge slip. However, when preparing Martinson's employee separation report at the time of the discharge, District Sales Manager Bosworth did not state that Martinson was fired because of these incidents, or indeed even mention them.

4

must prove: (1) he has a "disability;" (2) he is a "qualified individual;" and (3) in "discharg[ing]" him, his employer "discriminate[d] against [him] because of [his] disability." Id.; see also Doe v. University of Maryland Med. Sys. Corp., 50 F.3d 1261, 1264-65 (4th Cir. 1995).

For purposes of summary judgment, the district court concluded that Martinson had a disability and thus the first prong of this test had been satisfied, a conclusion that Kinney does not contest at this stage. Kinney, 917 F. Supp. at 425. Further, the court determined that the EEOC and Martinson had met the second prong by producing sufficient evidence at least to raise an issue of fact as to whether Martinson was qualified for his job despite his seizures. Id. at 425-29. However, the district court concluded that the EEOC and Martinson could not carry their burden on the third prong of the prima facie test. Id. at 430-32. The court reasoned that since Kinney did not discharge Martinson because he suffered from the "general disability" of epilepsy but rather "because of the specific attributes of [Martinson's] specific form of the disability," i.e., his seizures, Martinson could not prevail on the third prong. Id. at 430-31.

The district court erred with regard to its conclusion as to the third prong. When an employer concededly discharges an employee because of a disability, the employee need prove nothing more to meet the third prong of the prima facie test. See Rizzo v. Children's World Learning Ctrs., 84 F.3d 758, 762 (5th Cir. 1996). Kinney concededly discharged Martinson because of his "[s]eizures in store, sales floor, and stockroom" and his "[i]nability to control timing of same." To fire for seizures is to fire for a disability.[2] Seizures are "a

_____

[2] Both a disease and its physical manifestations can constitute disabilities. For example, both glaucoma and blindness, both Down's Syndrome and mental retardation, and both cerebral palsy and impaired speech can be disabilities. See H.R. Rep. No. 101-485(II), at 51 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 333 (listing as impairments both diseases, like brain cancer, and resulting conditions, like a hearing impairment). Cf. School Bd. of Nassau County v. Arline, 480 U.S. 273, 282 (1987) ("We do not agree . . . that, in defining a handicapped individual under [the Rehabilitation Act], the contagious effects of a disease can be meaningfully distinguished from the disease's physical effects on a claimant . . . .").

5

physical or mental impairment that substantially limits one or more of [Martinson's] major life activities," i.e., a disability. See 42 U.S.C. § 12102(2)(A) (defining disability). Whether Kinney fired Martinson because he suffered from epilepsy or because of the "specific attributes" of his disease, i.e., his seizures, is immaterial -- both are disabilities and an employer may not use either to justify discharging an employee so long as that employee is qualified for the job.[3] Thus, the undisputed facts demonstrate that Kinney discharged Martinson because of a disability. This is all the EEOC and Martinson must prove to satisfy the third prong of the prima facie test.

Although the district court erred with regard to the third prong, we can affirm if its decision was correct for any other reason. See, e.g., McMahan v. International Ass'n of Bridge, Structural & Ornamental Iron Workers Local 601, 964 F.2d 1462, 1467 (4th Cir. 1992). Here, we believe the district court was correct for another reason. Specifically, we believe the undisputed facts establish that Martinson was not qualified to perform at least one essential function of his position with Kinney.

To satisfy the second prong of the prima facie test, an ADA plaintiff must demonstrate that "with or without reasonable accommodation, [he] can perform the essential functions of the employment position." 42 U.S.C. § 12111(8) (defining "qualified individual with a disability"). The Kinney managers repeatedly testified that maintaining store security was an essential function of a Kinney salesperson's job. Martinson offered no evidence to the contrary. Thus, the undisputed evidence demonstrated and the district court properly recognized that this was "an inherent part of a shoe salesperson's job given that Kinney does not hire security guards." Kinney, 917 F. Supp. at 426. See 29 C.F.R. § 1630.2(n)(2)(ii) (explaining that a job "function may be essential because of the limited number of employ-

_____

[3] By contrast, misconduct--even misconduct related to a disability--is not itself a disability, and an employer is free to fire an employee on that basis. See, e.g., Tyndall v. National Educ. Ctrs., 31 F.3d 209, 214-15 (4th Cir. 1994) (finding no discrimination when firing because of disability-related absences); Little v. FBI, 1 F.3d 255, 259 (4th Cir. 1993) (finding no discrimination when firing for disability-related intoxication on duty).

6

ees available among whom the performance of that job function can be distributed").

Just as the evidence was uncontroverted that providing security was an "essential function" of a Kinney salesperson's job, so too the evidence was uncontroverted that Martinson was not qualified to perform this function. Kinney offered uncontradicted evidence that normally the Winchester store was manned by only two or three employees and that at least on some occasions, Martinson was the sole employee in the public areas of the store -- and so the only one available to provide security to the store and its merchandise. Moreover, Kinney District Sales Manager Bosworth testified that even when another employee was present on the sales floor, Martinson's seizures would attract the other employee's concern and attention and thus distract that employee from "maintaining a vigilance on the floor to make sure that" a thief did not "come in, take something . . . and walk off with it."

In view of the involved factual record, it is perhaps unsurprising that in finding a material factual dispute as to whether Martinson could perform the "essential functions" of his position, the district court apparently did not focus on the significance of this undisputed evidence. Instead, the court remarked "[a] shoe salesman . . . is charged with selling shoes, a task which if compromised, simply leaves customers without shoes for a brief period." Id. at 426. However, in light of the uncontroverted fact that Martinson was, at times, solely responsible for the security of the store and its merchandise, it is clear that when a seizure compromised Martinson's tasks as a shoe salesman, one of the tasks compromised was the provision of store security. Safeguarding the store and its goods is a task that cannot reasonably be abandoned for even "a brief period."

Even if a person is unable to perform the essential functions of the job in question, a "court must nevertheless determine whether the person could do the job with reasonable accommodation." Myers v. Hose, 50 F.3d 278, 281-82 (4th Cir. 1995) (citations omitted); see also Doe, 50 F.3d at 1264-66. Martinson never requested any accommodation (other than tolerance of his seizures), perhaps recognizing, as we conclude, that no reasonable accommodation was possible here. To accommodate Martinson adequately, Kinney would need to hire

7

an additional person to perform the essential security function of Martinson's job. The ADA simply does not require an employer to hire an additional person to perform an essential function of a disabled employee's position. <u>See</u> 29 C.F.R. Pt. 1630, App. at § 1630.2(o) ("An employer or other covered entity is not required to reallocate essential functions.").

Our holding is a narrow one, quelling the fears of the district court as to the "natural consequence" of a conclusion that Martinson was not qualified for his position with Kinney, <u>i.e.</u>, that such a conclusion would render "Martinson . . . unqualified as a matter of law to hold <u>any</u> position because Martinson obviously cannot discharge the `essential functions' of any job during the time he is unconscious." <u>Id.</u> at 427. This is not the "consequence" of our holding here.

Certain jobs do require uninterrupted vigilance for discrete periods of time. Martinson, as his counsel acknowledged at oral argument, is not qualified to perform such jobs. The security function of the Kinney salesperson position places it in that category. However, Martinson may well be qualified for a range of other jobs, including jobs in retail sales, so long as store security did not depend exclusively on Martinson's vigilance. <u>Cf.</u> <u>Overton v. Reilly</u>, 977 F.2d 1190, 1195 (7th Cir. 1993) (finding issue of fact as to whether disability-related naps at work disqualified the employee from his administrative job at the Environmental Protection Agency).

III.

In sum, the undisputed facts demonstrate that Martinson's disability left him unable to perform the essential security function of his position with Kinney. For this reason, he could not establish the second prong of his prima facie ADA case, <u>i.e.</u>, that he was a "qualified individual." Accordingly, the district court's order granting summary judgment to Kinney is

<u>AFFIRMED</u>.

8