IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 97-30154

---

ALLISON DEAS,

                                        Plaintiff-Appellant,
                                        Cross-Appellee,

        versus

RIVER WEST, L.P.; ET AL.,

                                        Defendants,

ALTERNATIVE ADDICTION TREATMENT CONCEPTS,
INC.; STROTHER P. LINDSEY-DIXON

                                        Defendants-Appellees,

RIVER WEST, L.P.,

                                        Defendant-Appellee-
                                        Cross-Appellant.

---

Appeals from the United States District Court for the
Middle District of Louisiana

---

September 3, 1998

Before POLITZ, Chief Judge, GARWOOD and BARKSDALE, Circuit Judges.

GARWOOD, Circuit Judge:

    Plaintiff-appellant Allison Deas (Deas) appeals the grant of

summary judgment in favor of defendants-appellees, contending that

the court below erred in concluding that she was not disabled under the Americans with Disabilities Act (ADA). 42 U.S.C. § 12101 *et seq*. We affirm.

## Facts and Proceedings Below

Responding to a classified advertisement announcing job opportunities associated with the planned opening of a pilot substance abuse program by Alternative Addiction Treatment Concepts (AATC),[1] Deas applied for employment as an "Addiction Technician." During the application process, Deas filled out a health history questionnaire on which she disclosed that she had suffered from "epilepsy (fits, seizures)" in the past.[2] She was subsequently

---

[1] This case involves two separate business entities, both of which were named as defendants by Deas in her suit. Alternative Addiction Treatment Concepts, Inc. (AATC), a Louisiana corporation, gained permission of the Louisiana Department of Health and Hospitals to institute a pilot substance abuse program. River West, L.P., a Delaware limited partnership, operates a hospital facility (River West Medical Center) in Plaquemine, Louisiana. AATC and River West entered into a contractual agreement providing for the development of a substance abuse program to be housed at the River West Medical Center. In the court below, Deas argued that both AATC and River West were her "employers" for purposes of liability under the ADA. The magistrate judge ruled that both entities qualified as employers, and River West has cross-appealed this ruling. Because we find that Deas was not "disabled" within the meaning of the ADA, the cross-appeal is moot, and we do not address the employment issues argued in the court below. For simplicity sake, we assume *arguendo* that both AATC and River West qualified as Deas' employers under the ADA, and we refer to these employers collectively simply as AATC.

[2] Initially Deas alleged that the questionnaire violated the ADA's prohibition on preemployment medical inquiries. *See* 42 U.S.C. § 12112(d). This issue, however, has not been briefed on appeal and is not before this Court.

interviewed by Dr. Strother P. Lindsey-Dixon (Dr. Dixon), medical director of the substance abuse program, and approved for hire by Dr. Dixon on July 13, 1993.

Deas commenced employment on July 29, 1993.[3] On August 9, 1993, during a staff lecture being conducted by Dr. Dixon, Deas appeared to suffer a *petit mal* or "absence" seizure during which she became verbally unresponsive and seemed to lose awareness of her surroundings for a brief time.[4] The seizure lasted only a few seconds, after which Dr. Dixon asked Deas if she was "all right." Deas responded that she was, and Dr. Dixon resumed the lecture with Deas in attendance.

A few hours later, Dr. Dixon was approached by another AATC employee, Lane Douglas (Douglas), who told her that he had seen Deas have a seizure earlier in the day. According to Dr. Dixon, Douglas told her that he had been conversing with Deas when she suddenly appeared to lose all awareness of her surroundings and was verbally uncommunicative for several minutes. Upon recovering,

---

[3] Because the substance abuse program was not yet open, Deas' job initially consisted solely of participating in the employee orientation program.

[4] In her deposition, Dr. Dixon described the episode as follows:

"I was lecturing and I saw [Deas'] head turn around very automated and it stayed, and her face was blank. And I called her name, and she did not move. . . . I continued to lecture and I continued to watch her; and after several seconds her head came back around, but she had a blank look on her face. And I called her name, and I asked her was she all right. And she said she was."

Deas apparently seemed to be unaware that she had just suffered a seizure. When Douglas asked her about it, Deas responded that she had been diagnosed as having a seizure disorder, but did not acknowledge that she had just experienced one.

After learning that Deas had suffered two seizures in a single day, Dr. Dixon concluded that Deas' seizures were not well controlled and became concerned that Deas would not be able to safely and adequately fulfill her duties as an addiction technician. Soon thereafter, Dr. Dixon determined that Deas could not perform the functions of an addiction technician and accordingly made the decision to discharge her. On August 13, 1993, Dr. Dixon and Peggy Miller, River West's human resources director, met with Deas to inform her that she was being discharged from employment due to her seizures. According to Deas, she was told in her exit interview that she was being fired because of her seizures and that Miller and Dr. Dixon stated that they had "both looked for another job somewhere in the hospital that could accommodate her, but that they were unable to find one, and that therefore [she] was fired from the hospital altogether."

Deas commenced suit in Louisiana state court alleging, *inter alia*, that her discharge violated the ADA. Defendants subsequently removed the case to the United States District Court for the Middle District of Louisiana, where, upon consent of the parties, the case was assigned to a magistrate judge under 28 U.S.C. § 636(c).

Ruling on cross-motions for summary judgment, the magistrate judge granted summary judgment for defendants on the basis that Deas was not disabled under the ADA.[5]  Deas brings this appeal.

## Discussion

We review a grant of summary judgment applying the same standard as the court below.  *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725 (5th Cir. 1995).  Summary judgment is proper when no issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Questions of fact are viewed in the light most favorable to the nonmovant and questions of law are reviewed *de novo*.  *Id.*

Deas has never contended, here or below, that she is "actually" disabled.  Rather, the essence of her claim, both in this Court and in the court below, is that her seizures do not substantially limit any major life activity, but that she was nevertheless regarded as disabled and discharged by Dr. Dixon on the basis of this misperception.  Accordingly, Deas contends that

---

[5]     The magistrate judge also ruled that both River West and AATC were Deas' "employers" under the ADA.  As noted above, River West has filed a cross-appeal challenging this conclusion.  Because we hold that Deas is not disabled within the meaning of the ADA, the issue is moot and we do not address it.

5

she qualifies for the protections of the ADA under the "regarded as" prong of the statute's definition of "disability."[6]

Under the ADA, an individual may qualify as "disabled" if he or she is "regarded as" having an impairment that substantially limits one or more major life activities. *Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir. 1996). In its implementing regulations, the Equal Opportunity Employment Commission (EEOC) defines three general situations or contexts in which a plaintiff qualifies for the ADA's protection under the "regarded as" prong.[7] *See Dutcher*, 53 F.3d at 728 & n.19. We have summarized the EEOC guidance on this issue as follows:

> "One is regarded as having a substantially limiting impairment if the individual (1) has an impairment which is not substantially limiting but which the employer perceives as constituting a substantially limiting impairment; (2) has an impairment which is substantially limiting only because of the attitudes of others toward

---

[6]  The ADA defines "disability" in the alternative, providing that

> "[t]he term 'disability' means, with respect to an individual--
>      (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>      (B) a record of such an impairment; or
>      (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

For lack of more eloquent terminology, we refer to subsection (C) as the "regarded as" prong of the definition, and we refer to a claim of disability pursuant to subsection (A) as an assertion of "actual" disability.

[7]  *See* 29 C.F.R. § 1630.2(l)(1)-(3).

such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment." *Bridges*, 92 F.3d at 332.

As it is uncontested that Deas' seizures constitute an "impairment,"[8] this case involves the first of the three scenarios outlined above (*i.e.*, where an individual has an impairment that is erroneously perceived by the employer as a substantially limiting impairment). Because it is also uncontested that Dr. Dixon was the individual responsible for deciding to terminate Deas and that she did so "because of" the seizures, the question on this appeal boils down to whether Deas produced sufficient evidence for a reasonable trier of fact to find that Dr. Dixon perceived her seizures as constituting a substantially limiting impairment.[9] In other words,

---

[8]    The ADA does not define the term "impairment," but the EEOC regulations provide that "physical or mental impairment" means:

> "(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or
> (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(1) & (2).

[9]    Under the "regarded as" prong, the disability status of the plaintiff turns not on the plaintiff's physical condition, but rather on how the plaintiff was perceived and treated by those individuals alleged to have taken discriminatory action. In the case at bar, the discriminatory act alleged on appeal is Deas' discharge from employment. The summary judgment evidence indicates that Dr. Dixon, acting in her capacity as the medical director of the substance abuse unit, made the decision to discharge Deas.

7

to have made a *prima facie* showing of disability, Deas must have produced sufficient evidence for a reasonable trier of fact to conclude that Dr. Dixon perceived her as having an "impairment" *and* that this impairment, if it existed as perceived by Dr. Dixon, would have substantially limited one or more of Deas' major life activities.[10]

Considered in the light most favorable to Deas, the summary judgment record clearly contains sufficient evidence to establish that Dr. Dixon regarded Deas as having an impairment.[11]  The more

---

Thus, the opinions or perceptions of other individuals involved are of little legal significance to Deas' claim.  Dr. Dixon is the relevant decisionmaker in the case at bar, and our analysis focuses on how she perceived, and acted toward, Deas.  *See Runnebaum v. NationsBank of Maryland*, 123 F.3d 156, 172 (4th Cir. 1997) (analysis of "regarded as" claim "focuses on the reactions and perceptions of the relevant decisionmakers working with [the plaintiff]").

[10]   *See, e.g., Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 143 (3d Cir. 1998) (en banc) (analysis of a "regarded as" claim requires the court to determine whether defendant regarded plaintiff as having an impairment and whether the impairment, as perceived by the defendant, would have substantially limited one or more of plaintiff's major life activities); *cf. Francis v. City of Meriden*, 129 F.3d 281, 285 (2d Cir. 1997) ("[P]laintiff must allege that the employer believed, however erroneously, that the plaintiff suffered from an 'impairment' that, if it truly existed, would be covered under the [ADA] and that the employer discriminated against the plaintiff on that basis.").

[11]   The term "impairment" has consistently been defined to include physiological disorders affecting neurological body functions, specifically including epilepsy.  Moreover, the EEOC's "Interpretive Guidance to Title I of the Americans with Disabilities Act," (hereinafter "Interpretive Guidance"), which is included as an appendix to the ADA implementing regulations, treats epilepsy as an impairment *per se*.  29 C.F.R. Pt. 1630.2(h), App. (1997).

8

difficult question is whether Deas produced summary judgment evidence sufficient for a reasonable trier of fact to find that Dr. Dixon regarded Deas' seizures as substantially limiting a major life activity.  Deas advances three separate arguments in this respect.  We review each in turn.

I. Seizures as a Disability *Per Se*

In her first argument on appeal, Deas urges this Court to hold that "seizures" constitute a disability *per se* and, consequently, that because she was regarded as suffering from seizures she was automatically perceived as suffering from a substantially limiting impairment.[12]  Although she cites several cases as supporting her

---

Although the summary judgment record does not reflect that Dr. Dixon thought Deas suffered from epilepsy, Dr. Dixon's belief that Deas' seizures were not isolated incidents and her decision to discharge Deas without further inquiry into Deas' medical condition strongly indicate that Dr. Dixon perceived Deas' seizures as constituting a neurological disorder sufficient to qualify as an impairment.

[12]    We note that there is some logical incongruity in Deas' argument.  If seizures constitute a disability *per se*, then Deas would qualify as "disabled" under the first prong of the ADA definition and there is no need to resort to the "regarded as" prong.  We also note that Deas' deposition testimony plainly reflects that she does not consider her seizures to be substantially limiting.  She testified that they do not interfere with her life in any way, except for limiting her in a few recreational activities.  In light of Deas' testimony that her seizures do not pose any significant limitation whatsoever, and in the absence of any medical evidence to the contrary, we find the argument that seizures are invariably and inherently disabling is both contradicted by Deas' sworn testimony in this case and unsupported by any evidence in the record before us.  In addition, Deas has provided no evidence of any severe societal prejudice against individuals who suffer from "seizures."

position, Deas relies primarily on *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683 (4th Cir. 1997), asserting that in that case the "Fourth Circuit held that seizures are a disability *per se* under the ADA." Deas finds support for her position in a passage from the opinion which reads: "To fire for seizures is to fire for disability. Seizures are 'a mental or physical impairment that substantially limits one or more of [Martinson's] major life activities,' *i.e.*, a disability." *Martinson*, 104 F.3d at 686.

Although this language would appear to support Deas' position, when considered in context it becomes clear that Deas has misread the court's holding in *Martinson*. As is specifically noted in that opinion, the issue of the plaintiff's disability status was not before the court because the district court had assumed, for purposes of its ruling, that the plaintiff was disabled, and the defendant-appellee did not challenge this conclusion on appeal.[13] As it was not a contested issue, the court on appeal did not address whether the plaintiff was disabled or whether seizures were a disability *per se*. The quoted language appears in a section of the opinion rejecting the district court's distinction between discharging an employee based on disability and discharging an employee due to the "physical manifestations" of that disability.

---

[13] As stated by the court, "[f]or purposes of summary judgment, the district court concluded that Martinson had a disability and thus the first prong of [his *prima facie* case] had been satisfied, a conclusion that [defendant-appellee] Kinney does not contest at this stage." *Martinson*, 104 F.3d at 686.

10

Thus, *Martinson* neither discusses nor supports the proposition that seizures constitute a disability *per se*.[14]

The other cases relied on by Deas are equally unavailing. As the magistrate judge aptly concluded: "the cases cited by [Deas] are unpersuasive because they contain little or no analysis, assume for purposes of the ruling that epilepsy or seizures are disabling impairments, or merely rely upon cases that [similarly] have not analyzed the issue." In sum, none of the cases cited by Deas provides a persuasive rationale for recognizing either "seizures" or epilepsy as a disability *per se*.

Additionally, Deas makes no attempt to address the numerous decisions of this and other courts declining to recognize various impairments as disabilities *per se* and emphasizing the importance

_____

[14] Deas appears to have simply misread the holding of *Martinson*. An explanatory footnote which accompanies the language relied on by Deas states that: "Both a disease and its physical manifestations can constitute disabilities." *Martinson*, 104 F.3d at 686 n.2. This clarification was needed because the district court there had distinguished between the "general disability" of epilepsy and its "specific attributes" (*i.e.*, seizures). The district court had reasoned that because the plaintiff had been fired due to the *symptoms* of the disability, rather than the disability itself, the plaintiff had failed to prove discrimination based on disability. *Id.* at 686. The Fourth Circuit corrected this error, clarifying that there is usually no legal distinction between discharging a disabled employee because of a disability and discharging an employee based on the characteristic or defining symptoms of that disability. Thus in *Martinson*, discharging the plaintiff based on his seizures was no different from discharging him due to his epilepsy. As it was uncontested that the plaintiff's epilepsy constituted a disability, the court concluded that, with respect to that plaintiff, "[t]o fire for seizures is to fire for a disability." *Id.*

of, and rationale behind, making disability determinations on an individualized basis. *See Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933, 938 (3d Cir. 1997) ("Some individuals suffer from relatively mild forms of epilepsy which cause nothing more than 'minor isolated muscle jerks'--so we cannot and do not conclude that all epileptics are substantially limited by the impairment."). *See also, e.g., Baert v. Euclid Beverage, Limited*, ___ F.3d ___, 1998 WL 381442 at *4 (7th Cir. 1998) (insulin dependent diabetes is not a *per se* disability under the ADA); *Burch v. Coca-Cola Co.*, 119 F.3d 305, 316 (5th Cir. 1997), *cert. denied*, 118 S.Ct. 871 (1998) ("Unlike HIV infection, the EEOC has not attempted to classify alcoholism as a per se disability, and we decline to adopt such a questionable position."); *Still v. Freeport-McMoran, Inc.*, 120 F.3d 50, 52 (5th Cir. 1997) (holding that blindness in one eye did not automatically constitute a disability); *Bridges v. City of Bossier*, 92 F.3d 329, 336 n.11 (5th Cir. 1996) (rejecting argument that hemophilia is a disability *per se*); and *Homeyer v. Stanley Tulchin Assocs., Inc.*, 91 F.3d 959, 962 (7th Cir. 1996) ("A disability determination, however, should not be based on abstract lists or categories of impairments, as there are varying degrees of impairments as well as varied individuals who suffer from the impairments.").

We have consistently emphasized that an individualized, case-by-case determination of disability best achieves the purposes of

12

the ADA.  As the EEOC states in its Interpretive Guidance, "[t]he determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual."[15]  Deas provides us with no reason to depart from our general practice of determining disability status on a case-by-case basis, and we consequently decline to do so.

We note two additional weaknesses in Deas' argument.  First, she has not provided any expert testimony or other evidence to support her position or its underlying premises.[16]  Second, she does not offer any practical definition of the impairment that she would have us declare a disability *per se*.  "Seizures" is quite simply

---

[15]  29 C.F.R. Pt. 1630.2(j), App. (1997).  We also note that the Supreme Court recently held that asymptomatic HIV infection inherently limits certain major life activities.  *Bragdon v. Abbott*, 118 S.Ct. 2196 (1998).  The Court specifically declined to rule on the question of whether HIV infection constitutes a *per se* disability, instead conducting an individualized inquiry to determine whether HIV infection would substantially limit one or more of the plaintiff's major life activities.  *Id.* 2206-2207.

[16]  Although it is not fully articulated, we assume that Deas' argument in favor of recognizing seizures as a disability *per se* is based either on the premise that individuals who suffer from "seizures" face significant societal prejudice and "attitudinal barriers" to employment or on the premise that all "seizures" are actually disabling.  Deas has not directed our attention to substantial evidence offered in support of either proposition, and our review of the record does not reveal any such evidence.

13

too broad and too amorphous a term to be useful in describing a class of impairments that is to receive *per se* treatment.[17]

---

[17] "Seizures" (as Deas has chosen to identify her impairment) vary widely both in their symptoms and their causes. The term is defined somewhat vaguely by one medical reference source as "[a] sudden episode of uncontrolled activity in the brain" or "transient neurological abnormalities caused by abnormal electrical activity in the brain." *The American Medical Association Encyclopedia of Medicine* 890 & 412 (Charles B. Clayman ed., 1989). Symptoms vary from "tingling or twitching of only a small area of the body" to "hallucinations or intense feelings of fear or familiarity" to severe convulsions and total unconsciousness. *Id.* at 890. Severe seizures can be fatal. *Id.* at 413. A second reference work notes that the "clinical manifestations of the [epileptic seizure] may vary from complex abnormalities of behavior including generalized or focal convulsions to momentary spells of impaired consciousness." *Stedman's Medical Dictionary* 584 (Marjory Spraycar ed., 26th ed. 1995).

The causes of seizures are apparently as varied as their symptoms, including, *inter alia*, "head injury, infection, cerebrovascular accident (stroke), brain tumor, metabolic disturbances, or alcohol (withdrawal or hereditary intolerance of alcohol)." Clayman, *supra* at 890. "A tendency to recurrent seizures or temporary alteration in one or more brain functions" constitutes "epilepsy," which shares the same variability in symptoms and causes. *Id.* at 412. The potential causes of epilepsy include, *inter alia*, "head injury, birth trauma, brain infection (such as meningitis or encephalitis), brain tumor, stroke, drug intoxication, drug or alcohol withdrawal states, or metabolic imbalances in the body." *Id.*

Due to this wide range of symptoms and causes, the term "seizures" does not appear to describe a class of impairments that share sufficiently similar characteristics such that they should be treated as a single "impairment" or "disability" under the ADA. The result of accepting Deas' argument that "seizures" constitute a disability *per se* would require courts to equate the impairment of an individual who experiences occasional "tingling" in his fingertips due to mild seizures with the impairment of an individual who experiences frequent, prolonged, and potentially life-threatening convulsions due to severe *grand mal* seizures. We view this as a legally untenable position, and conclude that the determination of whether seizures are disabling for purposes of the ADA is best left to a case-by-case analysis.

14

In sum, Deas has failed, both on appeal and in the court below, to provide any evidence or any reasoned argument or persuasive precedent that would warrant this Court's recognition of "seizures" as a disability *per se*. Consequently, we hold that the magistrate judge did not err in refusing to recognize Deas' seizures as a disability *per se* and in ruling that Deas did not establish, under this theory, that she was an "individual with a disability" within the meaning of the ADA.

II. "Awareness" as a Major Life Activity

In her second argument on appeal, Deas contends that the magistrate judge "erred in failing to recognize that the major life activities of seeing, hearing, and speaking are by definition and nature substantially limited in a person who has temporarily lost awareness of his or her surroundings." She also urges this Court to hold that "awareness" is a major life activity.[18] This argument is analogous to Deas' assertion that seizures should be considered a disability *per se*, and we reject it for similar reasons. We decline to accept the broad proposition that every temporary loss of "awareness," no matter how brief, necessarily constitutes a

---

[18] The term "awareness" has a variety of meanings and is not susceptible to any precise definition. Moreover, awareness describes a state of consciousness, not a discrete life "activity." Consequently, we decline to recognize awareness *per se* as a major life activity.

substantial limitation of the major life activities of seeing, hearing, and speaking.[19]

Deas also attempts to extend this general argument to the specific context of her case, arguing in essence that because Dr. Dixon perceived her to suffer from seizures, she must also have regarded her as substantially limited in the major life activities of seeing, hearing, and speaking. Accordingly, Deas asserts that her "discharge was based solely on [Dr. Dixon's] perception that in the event of a seizure, Miss Deas would be unable to see, hear, or speak to the patients or the other workers in the hospital," and offers this as evidence that Dr. Dixon regarded her as substantially limited in these major life activities. Deas offers no additional evidence that Dr. Dixon perceived her as substantially limited, but simply relies on the bald assertion, based on the above reasoning, that Dr. Dixon "perceived her as being substantially limited in the major life activities of seeing,

---

[19] We note that Deas does not direct the attention of this Court to a single decision supporting this proposition. Nor does she make any reasoned argument in favor of her position. She simply asserts that a temporary loss of "awareness," no matter how brief, must be considered to substantially limit the major life activities of seeing, hearing, and speaking. This argument is not supported by either the ADA or the decisions of this Court. Although it is uncontrovertible that a seizure which causes a temporary loss of awareness briefly "limits" an individual's ability to see, hear, and speak, it is far from clear that *all* such seizures have the effect of *substantially* limiting these major life activities. As described above, the symptoms of seizures vary widely. We do not doubt that in many cases epilepsy or a general seizure disorder will substantially limit one or more major life activities. We simply decline to accept the premise that all seizures will have this effect.

16

hearing, and speaking." This assertion is entirely conclusory and does not constitute evidence from which a reasonable trier of fact could conclude that Dr. Dixon regarded Deas as "substantially limited" in her ability to see, hear, and speak.

Moreover, it is axiomatic that "[a] physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA." *Dutcher*, 53 F.3d at 726. To rise to the level of a disability, an impairment must *substantially* limit one or more major life activities. *Id.* As has been repeatedly noted, "[t]he statutory language, requiring a substantial limitation of a major life activity, emphasizes that the impairment must be a significant one." *Forrisi v. Bowen*, 794 F.2d 931, 933-34 (4th Cir. 1986). Where, as in the case *sub judice*, the claim is that the plaintiff was "regarded as" having a substantially limiting impairment, the requirement that the perceived impairment be substantially limiting remains, and the plaintiff bears the burden of making a *prima facie* showing that the impairment, as the defendant perceived it, was substantially limiting.

The EEOC regulations define "substantially limits" as being either "[u]nable to perform a major life activity that the average person . . . can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general

17

population can perform that same major life activity."  29 C.F.R. § 1620.2(j)(1)(i) & (ii).  Dr. Dixon clearly did not regard Deas as completely "unable" to see, speak, and hear.  Nor does the evidence support the conclusion that Dr. Dixon perceived Deas as being "significantly restricted as to the condition, manner, or duration" under which she could see, speak, or hear.

The summary judgment record indicates only that Dr. Dixon believed that Deas suffered from *petit mal* seizures, during which she would lose some or all awareness of her surroundings for a brief period of time.  In her deposition testimony, Dr. Dixon testified that she believed Deas was experiencing *petit mal* seizures and described the symptoms of such seizures as follows:

> "[In a] petit mal seizure, one does not necessarily lose consciousness, but awareness; and they don't have a general jerking and spasmodic reaction throughout the body, but they are not aware of their surroundings.  And they may move their head or face in a certain way for a certain length of time and not be aware of their environment for a few seconds."

At most, the summary judgment evidence indicates that Dr. Dixon believed (correctly) that while experiencing a seizure, Deas was limited in her ability to see, hear, and speak for "a few seconds." Other than Dr. Dixon's decision to discharge Deas, this deposition testimony constitutes the only evidence in the record as to how "substantially" Dr. Dixon perceived the seizures to limit Deas' ability to see, hear, or speak.  Being unable to see, hear, or speak for a period of several seconds does not amount to a

18

"significant restriction" as to "the condition, manner, or duration" under which Deas could see, hear, and speak in comparison to an average member of the general population.[20]  In sum, viewing the summary judgment evidence in the light most favorable to Deas, we hold that no rational trier of fact could conclude that Dr. Dixon actually perceived Deas to be substantially limited in her ability to see, hear, or speak.

III.  The Major Life Activity of Work

Deas' final argument on appeal is that Dr. Dixon perceived her as substantially limited in the major life activity of work.  She alleges that during her exit interview "she was told by both Dr.

---

[20]  For example, in *Still v. Freeport-McMoran, Inc.*, 120 F.3d 50, 52 (5th Cir. 1997), we held that an individual who was permanently blind in one eye was not substantially limited in the major life activity of seeing because he could see well enough with the other eye to engage in most typical activities.  And in *Robinson v. Global Marine Drilling Co.*, 101 F.3d 35, 37 (5th Cir. 1996), we held that an individual who suffered from asbestosis, which impairment had reduced his lung capacity to 50% of normal and had caused him to experience shortness of breath and difficulty climbing stairs, was not substantially limited in the major life activity of breathing.  *See also Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 & n.11 (5th Cir. 1995), and *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (holding evidence of "a 13% permanent, partial disability" insufficient to establish disability for purposes of ADA).

Additionally, we note that Deas' claim is similar to a scenario used by the EEOC in describing how substantially limiting an impairment must be before it constitutes a disability.  In its Compliance Manual the EEOC states that a "borderline" case of cerebral palsy "that only slightly interferes with an individual's ability to read . . . and to speak" is not sufficient to constitute a disability.  *Rogers*, 87 F.3d at 759 (citing EEOC Compliance Manual, § 902.4(c)(1)).  Similarly, Deas' seizures interfere only slightly with the actual activities of seeing, hearing, and speaking.

Dixon and [Peggy Miller] that there were no other jobs in the hospital that could accommodate [her], and that therefore she was fired from the hospital altogether." Deas argues that this "proves the defendants perceived [her] to be substantially limited in her ability to work in *any* clinic or hospital setting." (Emphasis added.)[21] Deas further asserts that this demonstrates that Dixon and Miller believed her to be substantially limited as to both medical and nonmedical occupations and positions, including those of "administrators, secretaries, receptionists, clerks, housekeepers, dieticians, librarians, kitchen workers, maintenance workers, groundskeepers, janitors, and social service workers." This assertion is without legal merit and lacks evidentiary support.

With respect to the major life activity of working, "substantially limits" is defined as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life

---

[21] Dr. Dixon testified in her deposition that even an individual suffering from *petit mal* seizures that are *not* under "good control" could work safely in a variety of employment situations. She specifically stated, for example, that Deas--whose seizures she did not consider to be under "good control"--could safely work "in a number of places" and that Deas "could be a good receptionist."

activity of working."[22]  Thus, Dr. Dixon's belief that Deas was incapable of fulfilling the essential functions of an "addiction technician" in a hospital substance abuse treatment unit does not establish that she regarded her as being substantially limited in her ability to work in general.

Furthermore, Deas' assertion that Dr. Dixon and Peggy Miller regarded her as substantially limited in her ability to work is not supported by the record.  There is no evidence that either thought that Deas could not work safely in either "a class of jobs or a broad range of jobs in various classes."  Because Dr. Dixon is the one who decided to discharge Deas, Peggy Miller's perception of

---

[22]  *Id.  See also Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993) ("An employer's belief that an employee is unable to perform one task with an adequate safety margin does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general."); and *Forrisi*, 794 F.2d at 934 ("Several courts have previously addressed this issue, deciding unanimously that an employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job.").

Deas is irrelevant to Deas' argument.[23]  Consequently we limit our discussion to the evidence of Dr. Dixon's perceptions.

In her deposition testimony, Dr. Dixon stated that she could name "a number of places" where she thought Deas could work.  Dr. Dixon further made clear that the reason she believed that Deas could not safely work in a substance abuse clinic was that the patients being treated for substance abuse "would be of [a] higher risk" than typical patients.  Dr. Dixon also indicated that she only perceived the seizures as a problem because employment in a substance abuse unit required a certain level of vigilance that an individual suffering from seizures would be unable to provide.  Dr. Dixon analogized the requirements for working in a substance abuse unit to other occupations that require uninterrupted awareness or vigilance, stating, for example, that "if a person was an airplane pilot, seizures are not acceptable."  Thus, the summary judgment

---

[23]    There is a possibility that Deas is attempting to assert the claim that Miller discriminated against her by refusing to reassign her to a different position within the hospital.  Deas, however, cannot prevail on this claim because she has not made any showing either that positions were available or that she applied for, requested to be considered for, or even showed an interest in other positions at the hospital.  Deas bears the initial burden of producing evidence on these issues.  *See Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997).  Absent any evidence that such positions were available and absent any allegation that Deas requested to be considered for such a position, Deas has not even stated a claim of discrimination in hiring practices let alone produced sufficient evidence to survive a motion for summary judgment.  Thus, even if the record contained evidence that Miller perceived Deas as disabled (which, incidentally, it does not), Deas' claim would still fail, and Miller's perceptions are therefore irrelevant to the disposition of this case.

evidence does not support the assertion that Dr. Dixon regarded Deas as unable to work safely in a broad range of jobs. In sum, there is simply no indication in the record that Dr. Dixon regarded Deas as substantially limited as to anything more than a few, highly specialized jobs that required relatively high levels of vigilance or uninterrupted awareness.[24]

Accordingly, because Deas has produced no evidence from which a rational trier of fact could conclude that Dr. Dixon perceived her as substantially limited in her ability to work generally, we hold that the magistrate judge did not err in granting summary judgment in favor of the defendants-appellees on this issue.

### Conclusion

In conclusion we note that the record is devoid of any indication that Dr. Dixon overestimated the severity of Deas' impairment, overreacted to her seizures, or made the decision to terminate Deas based on a misperception as to Deas' capabilities. The ADA prohibits discrimination on the basis of disability "to

---

[24] The magistrate judge concluded that "There is no evidence that the defendants believed [Deas] could not, or should not, obtain work in this field [*i.e.*, general psychology] because of her seizures. Viewing the summary judgment evidence in the light most favorable to the plaintiff shows that at most the defendants perceived the plaintiff was unable to work in a single job--as an addiction technician in a substance abuse unit or a hospital." It appears, however, that, when viewed in a light most favorable to Deas, the summary judgment evidence is sufficient that a reasonable trier of fact could conclude that Dr. Dixon regarded Deas as unable to perform more than just the single job of "addiction technician," but there is no support whatsoever for a finding that Dr. Dixon perceived Deas to be incapable of working in a broad range of jobs.

23

ensure that [such] individuals are not denied jobs or other benefits because of the prejudiced attitudes or the ignorance of others."[25]   There is no evidence that Dr. Dixon's decision to terminate Deas was based on anything but concern for the safety of Deas and of the patients that would be treated in the substance abuse unit.  Deas has offered no evidence that Dr. Dixon's decision was in any way unreasonable or motivated by a malign or legally prohibited motive.  Accordingly, we hold that the magistrate judge did not err in granting summary judgment in favor of the defendants-appellees.  The judgment of the magistrate judge is therefore

AFFIRMED.

---

[25]    *School Bd. of Nassau County v. Arline*, 107 S.Ct. 1123, 1129 (1987).  *See also* 29 C.F.R. Pt. 1630.2(l) App. (adopting the reasoning and rationale of *Arline* as applying to the ADA).

24