# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 17, 2010

Lyle W. Cayce
Clerk

No. 09-60765

BARBARA WINBORNE

Plaintiff-Appellee

v.

SUNSHINE HEALTH CARE, INC.

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:07-CV-157

Before JONES, Chief Judge, and REAVLEY and HAYNES, Circuit Judges.
HAYNES, Circuit Judge:[*]

Defendant-Appellant Sunshine Health Care, Inc. ("SHC") appeals the district court's denial of its motion for judgment as a matter of law and, in the alternative, its motion for a new trial after a jury returned a verdict for Plaintiff-Appellee Barbara Winborne ("Winborne").  In the district court, SHC argued that: (1) Winborne failed to present evidence that SHC perceived her to have a disability within the meaning of the Americans with Disabilities Act ("ADA"); (2) Winborne failed to establish that SHC's reasons for termination were pretextual;

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-60765

and (3) the trial court improperly instructed the jury on Winborne's burden of proof. SHC raises the same three issues on appeal. We conclude that the district court erred in denying SHC's motion for judgment as a matter of law because Winborne failed to present sufficient evidence that SHC perceived her as having a disability under the ADA. We therefore REVERSE and RENDER judgment in favor of Appellant SHC without reaching SHC's remaining issues.

## I. FACTS AND PROCEDURAL HISTORY

Winborne began working as a licensed practical nurse ("LPN") at Sunshine Rest Home, SHC's predecessor, in 1992.[1] In 1993, Winborne learned that she suffered from transient ischemic attacks ("TIAs"). The symptoms of TIAs include temporary loss of awareness, weakness, severe headaches, dizziness, and difficulty concentrating. Winborne took medication to control the attacks and reported no problems in performing her job duties. In 2005, Winborne informed SHC's Director of Nursing, Amy Heatherly ("Heatherly"), that she suffered from TIAs. Heatherly was under the impression that Winborne's symptoms were controlled by medication.

On July 8, 2005, Winborne made her rounds through the facility, performing her duties as a treatment nurse. Winborne checked on an elderly female patient (the "Patient"), who required restraints because she suffered from dementia and was prone to agitation, finding her safely in bed. Approximately thirty minutes later, Winborne returned to the Patient's room to find the Patient hanging over the side of her bed, suspended by her pelvic restraints. The bed rails were down at the time. The Patient was rushed to the hospital and was later returned to SHC.

Following this incident, as required by law, SHC contacted the Mississippi Department of Health ("MDOH") to report the Patient's injury. Pursuant to

---

[1] SHC purchased Sunshine Rest Home and changed its name to Sunshine Health Care, Inc. in 2005.

2

MDOH's request that Heatherly investigate the incident, Heatherly filed a supplemental report with MDOH, noting that Winborne suffered from TIAs. In the report, Heatherly stated that upon questioning other SHC employees, several told her that Winborne made statements that were inconsistent with common nursing knowledge "as if she were incoherent" and that Winborne also said that on "some occasions while at work" she was having TIAs. The investigation also revealed that Winborne was the last person to check on the Patient. Heatherly reported that "[b]ased on these facts I believe it is a possibility that the side rail was left down by Barbara Winborne upon first visit to the room." SHC suspended Winborne while conducting an investigation into the incident.

Several months later, MDOH conducted an on-site investigation into the incident. Heatherly and SHC's owner, Eric Holland ("Holland"), maintained that the MDOH inspector mentioned Winborne in conversations on the day of the investigation. On February 2, 2006, SHC received a letter from MDOH stating that the claims of abuse and neglect were "substantiated," and SHC terminated Winborne pursuant to its policy that requires termination of an employee found guilty of patient neglect. Winborne sought and received permission to sue from the EEOC and then sued, alleging that SHC terminated her in violation of the ADA.

At trial, Holland testified that he was concerned for the safety of his patients and questioned whether a nurse in Winborne's position who suffered from TIAs posed a risk to patients. Holland admitted that he contacted the Mississippi Board of Nursing ("BON") to inquire whether a nurse who had TIAs could work with patients. Holland also testified that "at some point [he] considered her to possibly have a medical disability that would affect her ability to work"; however, he also testified that several nurses at SHC worked in administrative positions. Heatherly admitted requesting a signed release from

No. 09-60765

Winborne's physician that she was "competent and safe at all times to provide nursing care while receiving treatment for her current medical condition." Winborne testified that she had worked as a nurse for over twenty years, that she had no problems performing her duties, and that she subsequently found a job as a nurse in another nursing home.

A jury awarded her $10,000 and over $26,000 in attorney's fees and costs. After the jury verdict, SHC filed a motion for judgment as a matter of law and, in the alternative, a motion for a new trial. The district court denied SHC's motions, and SHC filed this appeal.

## II.  STANDARD OF REVIEW

We review a denial of a motion for judgment as a matter of law *de novo*, applying the same legal standard as the district court. *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs.*, 612 F.3d 800, 808 (5th Cir. 2010). The appellate court will "consider all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party." *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 624 (5th Cir. 2008) (quoting *Brown v. Bryan Cnty.*, 219 F.3d 450, 456 (5th Cir. 2000)). A motion for judgment as a matter of law should be granted "[i]f during a trial by jury a party has been fully heard on an issue and there is *no* legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue . . . ." *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (emphasis added); *see also Propulsion Techs., Inc. v. Attwood Corp.*, 369 F.3d 896, 905 (5th Cir. 2004) (granting judgment as a matter of law on a misappropriation of trade secrets claim because the party presented no evidence of use of a confidential design or confidential information).

## III.  DISCUSSION

SHC argues that Winborne presented insufficient evidence to support the jury's finding that SHC regarded Winborne as disabled, which is an essential

4

No. 09-60765

element of Winborne's prima facie ADA claim.  Specifically, SHC argues that although Winborne presented some evidence that SHC employees believed Winborne may not be able to perform her *particular* job as a treatment nurse because of her TIAs, she did not satisfy her obligation to prove that SHC regarded her as unable to perform a class of jobs or a broad range of jobs in various classes.

## A.   Pre-Amendment ADA "Regarded as" Liability Requires that Winborne Show that SHC Regarded Her as Significantly Restricted From a Class of Jobs

The applicable version of the ADA[2] prohibited covered entities, including private employers such as SHC, from discriminating against qualified individuals with a disability.  42 U.S.C. § 12112(a).  The ADA defined "disability" as: (1) "a physical or mental impairment that substantially limits one or more major life activities"; . . .  or (3) "being regarded as having such an impairment . . . ."  42 U.S.C. § 12102(1).  Winborne chose to proceed under the third prong of the definition, alleging that SHC regarded her as disabled.  In addition to being perceived to have an impairment, Winborne had to prove that the perceived impairment limited a "major life activity" and that the limitation was "substantial."  29 C.F.R. § 1630.2(l).

Winborne claims that SHC regarded her as being substantially limited in the "major life activity" of working.  The ADA and the EEOC regulations included

---

[2]   Effective January 1, 2009, Congress made substantial changes to the ADA that affected "regarded as" liability.  *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008).  We have held that these amendments to the ADA do not apply retroactively. *See EEOC v. Agro Distrib. LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009) ("Congress recently enacted the ADA Amendments Act of 2008 . . ., but these changes do not apply retroactively.").  This case was filed on July 2, 2007; therefore, the ADA Amendments Act of 2008 does not apply.  All references to the ADA and concomitant regulations are to the versions in effect at the time of the incidents in question.  We express no opinion as to how this case would be analyzed under the amended law.

No. 09-60765

"working" in the definition of "major life activity." 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(i). The regulations also provided that, with respect to the major life activity of working, the term "substantially limits means significantly restricted in the ability to perform either a *class of jobs* or a *broad range of jobs in various classes* as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(I) (emphasis added). According to the regulations, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* Winborne therefore had the burden of proving that her impairment or perceived impairment extended beyond her one particular job to a class of jobs or a broad range of jobs in various classes. *Id.*; *see also Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491-93 (1999).

The Supreme Court, in applying 29 C.F.R. § 1630.2, has held that "[w]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton,* 527 U.S. at 491. In *Sutton*, the Court held that the plaintiffs failed to meet their burden of proof because they alleged only that the defendant regarded them as disabled from the job of "global airline pilot." *Id.* at 493. According to the Court, this "does not support the claim that [the employer] regard[ed] petitioners as having a substantially limiting impairment" because this was a single job, not a class of jobs or a broad range of jobs in various classes. *Id.* at 493. According to the Court, "there are a number of other positions utilizing petitioners' skills, such as regional pilot and pilot instructor, to name a few . . . ." *Id.* Merely alleging that the employer regarded the plaintiffs as disabled from "one type of job, a specialized job, or a job of choice" is not sufficient. *Id.* at 492.

Applicable precedent of this circuit establishes that proof that a plaintiff is disqualified from one job is insufficient to state a claim. *See*, *e.g.*, *Deas v.*

No. 09-60765

*Alternative Addiction Treatment Concepts, Inc.*, 152 F.3d 471, 481 (5th Cir. 1998); *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1120 (5th Cir. 1998).  For example, in *Deas*, the plaintiff alleged that her employer regarded her as substantially limited in her ability to work because the employer fired her from her job as an addiction technician because of a seizure disorder and told her that "there were no other jobs in the hospital that could accommodate [her]."  *Deas*, 152 F.3d at 480-81.  She argued that her employer's statement "prove[d] the defendants perceived [her] to be substantially limited in her ability to work in *any* clinic or hospital setting," but we rejected this argument, noting that she did not make "any showing either that positions were available or that she applied for, requested to be considered for, or even showed an interest in other positions at the hospital."  *Id.*  In affirming summary judgment in favor of the defendants, we held that the record did not support the plaintiff's assertion that her employers regarded her as "substantially limited" in her ability to work and that there was "no evidence that either [defendant] thought that [she] could not work safely in either 'a class of jobs or a broad range of jobs in various classes.'"  *Id.* at 481.

Winborne had the burden of showing that her impairment or perceived impairment extends beyond one job to a class of jobs or a broad range of jobs in various classes. *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 475 (5th Cir. 2006).  A plaintiff must provide evidence to substantiate a "regarded as" claim of employment discrimination.  *Id.*  The EEOC regulations set out the factors a court may consider in determining whether a person is substantially limited in the major life activity of working:

> (A) The geographical area to which the individual has reasonable access;
> (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

No. 09-60765

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii). In *Sutton*, the Supreme Court noted that courts *should* consider these factors in determining whether a plaintiff is substantially limited in the major life activity of working. 571 U.S. at 491. In *Sherrod*, we affirmed a district court's decision to grant summary judgment to an employer in part because the plaintiff failed to "present[] evidence of the number and types of jobs from which she is disqualified, or evidence that her training and skills limit her to jobs requiring heavy lifting." 132 F.3d at 1120. An employer's comments that the employee cannot work in a particular job or that there were no other jobs that could accommodate the employee, without more, are insufficient to support a finding that the employer regards that employee as disqualified from a class of jobs or a broad range of jobs in various classes. *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 506, 508 (5th Cir. 2003); *Deas*, 152 F.3d at 480-81. Having set out the law, we now turn to the facts of this case.

**B.     Winborne Presented No Evidence that SHC "Regarded Her as" Disabled within the Meaning of the Pre-Amendment ADA**

We conclude that the district court erred in denying SHC's motion for judgment as a matter of law because Winborne presented insufficient evidence that her perceived impairment extended beyond one job to a class of jobs or a broad range of jobs in various classes. Plaintiff's evidence on this issue was limited to demonstrating that SHC may have regarded her as disabled from working at *her* job—that of a treatment nurse who cared for patients. Terminating an employee because the employer regards that employee as unable

8

to perform his or her particular job, however, is insufficient to establish an ADA violation under the applicable law. *Gowesky*, 321 F.3d at 508; *Deas*, 152 F.3d at 481. Indeed, in denying SHC's motion for judgment as a matter of law, the district court improperly concluded that because the "[e]vidence revealed, for instance, that the director of nursing at Sunshine Health Care did not believe the plaintiff to be capable of performing *her* job despite the plaintiff's doctor's statements to the contrary," Sept. 15, 2009 Order at 2 (emphasis added), Winborne offered sufficient evidence to sustain the jury's verdict. The case law establishes, however, that this showing is insufficient as a matter of law to show that SHC regarded her as disabled from working in either a class of jobs or a broad range of jobs in various classes. *Sutton,* 527 U.S. at 491; *Deas,* 152 F.3d at 481.

At trial, Winborne presented the following evidence to show that SHC regarded her as disabled: (1) Holland's testimony that he contacted the BON to inquire whether a nurse with TIAs could practice; (2) Holland's testimony that he did so because he was concerned that TIAs might influence Winborne's ability to work; (3) Holland's testimony that he terminated Winborne because he could not take a chance of jeopardizing his patients' safety; and (4) Heatherly's testimony that she recommended Winborne's termination because she was concerned about Winborne's ability to practice as a nurse, that she believed Winborne was not safe to work with patients because of her altered thinking, and that she wanted a note from Winborne's neurologist stating that Winborne was competent and safe to work as a nurse.

We reject Winborne's argument that this evidence is sufficient to carry Winborne's burden of proof on this element of her claim. Winborne offered *no evidence* at trial that SHC regarded her as unable to perform a class of jobs or a broad range of jobs. It is clear that both Holland and Heatherly were concerned about Winborne's ability to care for patients and that the role of Winborne's TIAs

No. 09-60765

in causing the incident with the Patient were a primary concern that led to her discharge from her job as a *treatment* nurse. However, Winborne offered no evidence to show that her condition disqualified her from other nursing positions or a broad range of healthcare-related positions that did not involve patient care.

Winborne failed to present *any* evidence about the "number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area" or the "number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area" from which SHC perceived she was disqualified. 29 C.F.R. § 1630.2(j)(3)(ii). Winborne did not ask a single question at trial about whether SHC would have hired her in an administrative role, although Holland testified that several nurses had administrative positions at SHC. Winborne also failed to ask a single question about whether SHC perceived her as incapable of performing any job that utilized her skills. Holland and Heatherly's statements, taken alone, are insufficient to support the jury's verdict.

## IV. CONCLUSION

Because Winborne failed to present any evidence to prove that SHC regarded her as incapable of performing a class of jobs or a broad range of jobs in various classes, we conclude that the district court erred in denying SHC's motion for judgment as a matter of law. As the evidence was insufficient as a matter of law to support the jury's verdict, we therefore REVERSE and RENDER judgment in favor of Defendant-Appellant SHC.