UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DAVID G. LAMB,

        *Plaintiff-Appellant,*

v.

QUALEX, INCORPORATED, a Delaware
corporation,

        *Defendant-Appellee.*

EQUAL EMPLOYMENT ADVISORY
COUNCIL,

        *Amicus Curiae.*

No. 99-1188

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-98-413)

Argued: January 24, 2000

Decided: April 3, 2002

Before MICHAEL and TRAXLER, Circuit Judges, and
John T. Copenhaver, Jr., United States District Judge
for the Southern District of West Virginia,
sitting by designation.

---

Affirmed by unpublished opinion. Judge Copenhaver wrote the opinion, in which Judge Michael and Judge Traxler joined.

---

## COUNSEL

**COUNSEL**: Bradley Phipps Marrs, MEYER, GOERGEN & MARRS, Richmond, Virginia, for Appellant. Paul Michael Thomp-

son, HUNTON & WILLIAMS, Richmond, Virginia, for Appellee. **ON BRIEF**: Robert L. Wise, MEYER, GOERGEN & MARRS, Richmond, Virginia, for Appellant. Edwin F. Farren, HUNTON & WILLIAMS, Richmond, Virginia, for Appellee. Ann Elizabeth Ressman, Corrie L. Fischel, MCGUINESS, NORRIS & WILLIAMS, Washington, D.C., for Amicus Curiae.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

COPENHAVER, District Judge:

This is an appeal from an order entered December 16, 1998, by the United States District Court for the Eastern District of Virginia, granting summary judgment in favor of appellee, Qualex, Inc., and against appellant, David G. Lamb, on all four counts of appellant's complaint, each of which alleges a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and from an order entered by the district court on January 12, 1999, denying appellant's motion for reconsideration.

The primary question in this case is whether the appellee violated the ADA by discharging Lamb, a disabled employee, who requested that he be allowed to work on a part-time basis. Because Lamb was unable to perform the essential functions of his job, we hold that he was not a "qualified individual with a disability" protected by the ADA. In addition, we find that Lamb did not establish a claim of retaliatory discharge under the ADA because he failed to show that the reason articulated by his employer for his discharge was pretext. We accordingly affirm the district court's grant of summary judgment to the employer.

I.

Defendant, Qualex, Inc. ("Qualex"), a subsidiary of Kodak Corporation, is in the business of leasing film development equipment to

retail drug and discount stores. Qualex's retailers operate the leased equipment with their own employees. Qualex provides training, operation and technical support to its retailers and their employees. Qualex manages these retail sites through the use of Account Development Specialists ("ADS") who are responsible for an assigned geographic territory. Inasmuch as each ADS is expected to respond to customer support requests promptly, all ADSs employed by Qualex are full-time employees.

Qualex hired plaintiff, David Lamb, as an ADS on December 2, 1996. Qualex assigned Lamb a geographic territory comprised of the state of Virginia, except for the northern suburban area, and a small portion of West Virginia. Lamb's territory initially included thirty-eight retail stores, but within five months rapidly grew to fifty stores. Because of the increase in the number of stores in Lamb's territory, Lamb and his supervisor, Lisa Rice, discussed in early June, 1997, the possibility of dividing his territory in half and hiring another ADS.

Lamb's health suffered throughout his employment with Qualex. As a result, Lamb missed about one-half of his work-time during the ten month period between his date of hire on December 2, 1996, and his date of termination on September 26, 1997. In particular, Lamb missed a few days of work in early January, 1997, to undergo and recover from a root canal. He was then off work with the flu from February 4, 1997, to February 10, 1997. Lamb was later hospitalized from April 2, 1997, to April 6, 1997, for treatment of kidney stones and renal failure. Lamb remained off work recuperating as a result of his kidney problems through May 6, 1997, except for a few days attending Qualex meetings. As discussed more particularly below, Lamb subsequently took a medical leave of absence beginning on June 17, 1997, from which he never returned.

Prior to being hired by Qualex, Lamb sought treatment from a licensed clinical social worker, Marion Brown, for depression. Lamb had occasional office visits with Brown from August, 1995, to January, 1997, and then regular visits beginning in February, 1997. According to Brown, Lamb's mental condition began to deteriorate after he was released from the hospital on April 6, 1997, due in part to the side effects of his medication. Lamb resumed his work duties at Qualex on May 7, 1997.

By the beginning of June, 1997, Lamb reported to Brown that he felt extremely fatigued and he reported other symptoms typical of the onset of an episode of major depression. Although Lamb indicated to Brown that he was pressing on, fully performing his job, and trying to overcome his difficulties, Brown advised Lamb to seek a medical disability leave from his job with Qualex. Lamb initially refused Brown's advice on the subject. However, during the month of June, 1997, Lamb's symptoms of depression worsened. On June 17, 1997, during an office visit with Brown, Lamb reported suicidal ideations. At Brown's urging, Lamb agreed to seek a medical leave of absence from work in order to undergo intensive therapy for his depression and allow his body to adjust to his prescription medication.

Lamb met with Sheryl Johnson, Human Resources Officer for Qualex, on the afternoon of June 17, 1997, to discuss his desire to apply for medical leave. During that meeting, Johnson told Lamb that he was eligible for a medical leave of absence under Qualex's short-term disability plan. Johnson asked Lamb to provide a statement from his physician to support his request. Lamb promptly provided Johnson with a written request for a medical leave of absence along with a certificate from his physician regarding the necessity for his taking such leave. In Lamb's request for leave, he stated that the expected duration of his leave would be 60 to 90 days, depending on his improvement. Lamb also provided a letter from his primary care physician, Philip Rizk, M.D, which stated that Lamb was "medically disabled from any type of gainful employment," and that the duration of his disability was "unknown but expected to last on the order of 60-90 days." In response to this letter, Qualex placed Lamb on short-term disability leave effective June 17, 1997. At that time, Qualex informed Lamb that it could not guarantee his position would be held open while he was on leave and that Lamb could not return to work without first providing Qualex with a medical release.

During his leave, Lamb communicated with Brown regarding his progress and recovery. Brown, in turn, communicated with Johnson on Lamb's behalf. During the month of July, 1997, Brown spoke with Johnson on three occasions, during which she apprised Johnson of Lamb's progress and requested that he be allowed to return to work on a part-time basis for thirty days, after which Lamb was expected to be able to resume full-time work. During these calls, Brown

informed Johnson that stress would have an impact on Lamb's condition and that readjustments to his medication would necessitate the part-time schedule for the one month period. Johnson sought the approval of Rice for Lamb to return to work on a part-time basis, which Rice refused on the ground that the ADS position required full-time work and that Qualex had no part-time ADS positions. In the meantime, Rice scrambled about to bring in a number of ADSs from other states in the southeast region in an effort to cover temporarily Lamb's area.

Soon after granting Lamb short-term disability leave on June 17, 1997, Qualex divided Lamb's territory into two parts and hired Steven Duffy as the ADS to handle the Richmond market area. This put into effect the earlier discussions between Lamb and Rice of the need to divide Lamb's geographical territory between two ADSs. On July 7, 1997, Qualex hired the second ADS, Sara Steele, as the ADS for the Norfolk market area. Steele began her employment with Qualex on July 21, 1997, completed her training in August and was servicing 29 stores in September, 1997.

On September 3, 1997, Brown telephoned Rice to discuss Lamb's situation. During that conversation, Rice told Brown that she would talk to Johnson further about Lamb's return to work. Rice additionally agreed to contact Lamb personally to discuss his return to work. Rice contacted Johnson and informed Johnson that no part-time work could be offered to Lamb. Having not heard from Rice as of September 9, 1997, Lamb wrote a letter to Rice that same day requesting that Qualex allow him to return to work as a part-time ADS managing some of the accounts from his former territory, to which Rice never responded. This letter was copied to both Johnson and Robert Golian, Senior Director of Human Resources. According to Golian, this was the first he heard of Lamb's desire to return to work on a part-time basis. On September 12, 1997, Lamb spoke with Johnson concerning his return. At that time, Johnson informed Lamb, as she had in June, that he needed a medical release in order to return to work. On September 22, 1997, Lamb's psychiatrist, Sultan Lakhani, M.D., provided to Qualex a letter that stated "Mr. Lamb has been advised to resume his job on a part-time basis only." That letter was circulated within Qualex for a few days before reaching the desk of Golian on

September 25, 1997. Golian decided to terminate Lamb that same day. Golian terminated Lamb by letter dated September 26, 1997.

Prior to his termination, Lamb applied to the Social Security Administration ("SSA") on September 19, 1997, for total disability benefits. In his SSA application, Lamb claimed that "[I] became unable to work because of my disabling condition on April 2, 1997." He further noted that "I am still disabled." The SSA denied his application for benefits on November 18, 1997. Lamb submitted a request for reconsideration to the SSA on December 11, 1997, in which he stated that "I believe that I am disabled because of my depression which is major and severe and is affecting everything in my life. I am unable to work." Pursuant to Lamb's Request for Reconsideration, the SSA reversed its initial denial and, finding him disabled as of April 2, 1997, awarded Lamb disability benefits.

## II.

We review a district court's grant of summary judgment *de novo*. *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of showing — "that is, pointing out to the district court — that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317-325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(e). A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-moving party. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is not appropriate if the evidence is sufficient for a reasonable jury to return a verdict in favor of the plaintiff. *Anderson*, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn from them are in dispute. *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991).

In reviewing the evidence, a court must neither resolve disputed facts or weigh the evidence, *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### III.

On July 2, 1998, Lamb filed a four count complaint against Qualex in the district court which alleged that: (1) Qualex terminated Lamb because of his disability in violation of § 102(a) of the ADA which provides that it is unlawful for an employer to "discriminate against a qualified individual with a disability because of the disability of such individual," *see* 42 U.S.C.A. § 12112(a); (2) Qualex discriminated against Lamb by failing to reasonably accommodate his disability in violation of § 102(b)(5)(A) of the ADA which provides that it is unlawful for an employer to fail to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such [employer]," *see* 42 U.S.C.A. § 12112(b)(5)(A); (3) Qualex terminated Lamb in an effort to avoid making reasonable accommodations in violation of § 102(b)(5)(B) of the ADA which prohibits an employer from "denying employment opportunities . . . if such denial is based on the need . . . to make reasonable accommodations to the physical or mental

impairments of the employee," *see* 42 U.S.C.A. § 12112(b)(5)(B); and (4) Qualex terminated Lamb in retaliation for his request of reasonable accommodation in violation of § 503(a) of the ADA which makes it unlawful to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing to enforce this chapter." *See* 42 U.S.C.A. § 12203(a).

On December 16, 1998, the district court granted summary judgment to Qualex on all four counts of Lamb's complaint. In dismissing each of the counts, the district court found that Lamb was not a "qualified individual with a disability"[1] for two reasons. First, the district court found that Lamb was judicially estopped from claiming to be a "qualified individual with a disability" inasmuch as he made representations to the Social Security Administration that he was not able to work. Second, the district court found that Lamb was not a "qualified individual with a disability" because no reasonable accommodation would allow him to perform the essential functions of his job. Lamb now appeals the district court's summary judgment rulings on each count.

---

[1]As with Counts I, II, and III, the district court dismissed Lamb's Count IV retaliatory discharge claim on the ground that he was not a "qualified individual with a disability." Following entry of the district court's order on December 16, 1998, dismissing each of his claims, Lamb filed a motion for reconsideration in which he argued that the district court erred in dismissing Count IV on the ground that he was not a "qualified individual with a disability," which is not a necessary element of an ADA retaliation claim. By memorandum opinion entered on January 12, 1999, the district court agreed that it had misstated the law when it granted summary judgment in favor of Qualex on Count IV because Lamb was not a "qualified individual with a disability." The district court affirmed its earlier decision, however, on an alternate basis, finding that Lamb had failed to come forward with sufficient evidence from which a reasonable juror could conclude that he was terminated in retaliation for seeking reasonable accommodations from his employer.

### A.   *Qualified Individual with a Disability*

As a preliminary matter, to obtain relief under the ADA, Lamb must demonstrate that he is a "qualified individual with a disability." *See* 42 U.S.C.A. § 12112; *see also Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 348 (4th Cir. 1996); *Doe v. University of Maryland Medical Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8); *Tyndall v. National Educ. Ctrs., Inc.*, 31 F.3d 209, 213 (4th Cir. 1994).

### 1.   *Judicial Estoppel*

The district court found that Lamb's representation to the SSA that he was unable to work estopped him from claiming to be a "qualified individual with a disability" under the ADA. In so holding, the district court relied on the decision of the United States Court of Appeals for the Fifth Circuit in *Cleveland v. Policy Management Sys. Corp.*, 120 F.3d 513 (5th Cir. 1997), in which that court held that the filing of an application for, or the receipt of, social security disability benefits judicially estops a claimant from asserting that he is a "qualified individual with a disability" under the ADA.[2]

---

[2]A disagreement among the circuit courts about the legal effect upon an ADA suit of the application for, or receipt of, disability benefits existed at the time *Cleveland* was decided by the Fifth Circuit. *Compare*, *e.g.*, *Rascon v. U.S. West Communications, Inc.*, 143 F.3d 1324, 1332 (10th Cir. 1998) (application for, and receipt of, social security disability benefits is relevant to, but does not estop plaintiff from bringing an ADA claim); *Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 382 (6th Cir. 1998) (same); *Swanks v. Washington Metro. Area Transit Auth.*, 116 F.3d 582, 586 (D.C. Cir. 1997) (same), with *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 618-20 (3rd Cir. 1996) (applying judicial estoppel to bar plaintiff who applied for disability benefits from bringing suit under ADA), *cert. denied*, 519 U.S. 1115 (1997), and *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481-82 (9th Cir. 1996) (declining to apply judicial estoppel but holding that claimant who declared total disability in a benefits application failed to raise a genuine issue of material fact as to whether she was a qualified individual with a disability).

On writ of certiorari, the United States Supreme Court of Appeals, in *Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 119 S. Ct. 1597 (1999), vacated the holding of the Fifth Circuit and held that pursuit and receipt of social security disability benefits does not automatically estop a recipient from pursuing an ADA claim. The Court recognized, however, that inasmuch as an ADA plaintiff's sworn assertion of total disability to the SSA is inconsistent with the essential element of an ADA claim — namely, that he can perform the essential functions of his job — summary judgment is appropriate unless the plaintiff can come forward with an explanation for the inconsistency from which a reasonable juror could conclude that "assuming the truth of, or the plaintiff's good faith belief in, the earlier statement [to the SSA], the plaintiff could nonetheless 'perform the essential functions' of [his] job, with or without 'reasonable accommodation.'" 119 S. Ct. at 1604.

Given the decision of the United States Supreme Court in *Cleveland*, Lamb contends that the district court erred in applying judicial estoppel to find as a matter of law that he was not a "qualified individual with a disability." According to Lamb, the record contains sufficient evidence explaining the inconsistency, if any, between the statements he made as part of his SSA application and those made as part of this action from which a reasonable juror could conclude that, notwithstanding what he told the SSA, he could still perform the essential functions of his job as an ADS with reasonable accommodation.

Qualex argues that inasmuch as the district court found that Lamb could not claim to be a "qualified individual with a disability" not only on the basis of judicial estoppel but also on the alternative ground that he failed to produce evidence showing that he could perform the essential functions of his job with reasonable accommodation, the Supreme Court's decision in *Cleveland* does not warrant reversal here but merely renders moot the issue of judicial estoppel on appeal.

We agree with Qualex in this regard. As discussed more particularly below, the district court properly concluded that Lamb was not a "qualified individual with a disability" inasmuch as he could not perform the essential functions of his job with reasonable accommo-

dation. Consequently, even if Lamb could come forward with a sufficient explanation of the inconsistencies between statements he made to the SSA and statements he made during the course of this action, he would still be unable to produce sufficient evidence from which a reasonable juror could conclude that he could perform the essential functions of his job with reasonable accommodation.

## 2. *Essential Functions of the Job*

Under the ADA, only individuals who are qualified for the job they seek may state a claim for discrimination. As noted previously, the ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8). A qualified person must be "able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S. Ct. 2361 (1979). To prove that he was qualified for the ADS position, Lamb must produce evidence that: (1) he could "'perform the essential functions of the job'" or (2) if not, whether "'any reasonable accommodation by [his] employer would enable [him] to perform those functions.'" *Tyndall*, 31 F.3d at 213 (*quoting Chandler v. City of Dallas*, 2 F.3d 1385, 1393-94 (5th Cir. 1993)). Essential functions of a job include "fundamental job duties of the employment position the individual holds or desires," 29 C.F.R. § 1630.2(n), which "bear more than a marginal relationship to the job at issue." *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 (4th Cir. 1997) (*quoting Southeastern Community College*, 442 U.S. at 406).

A regular and reliable level of attendance is an essential function of one's job. *Halperin v. Abacus Tech Corp.*, 128 F.3d 191, 199 (4th Cir. 1997), *abrogated on other ground by Baird ex rel. Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999); *Tyndall*, 31 F.3d at 213. Indeed, an employee "who does not come to work cannot perform any of his job functions, essential or otherwise." *Tyndall*, 31 F.3d at 213 (*quoting Wimbley v. Bolger*, 642 F. Supp. 481, 485 (W.D. Tenn. 1986), *aff'd*, 831 F.2d 298 (6th Cir. 1987)). An employee who cannot meet the attendance requirements of the job at issue cannot be considered a "qualified" individual protected by the ADA. *Tyndall*, 31 F.3d at 213.

Consequently, a plaintiff who can work only on a part-time basis cannot be a "qualified individual with a disability" if the ability to work full-time is essential to his job.

A plaintiff may not prevail by demonstrating that he might have been able to perform the essential functions of the job at some time in the future. *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995). A plaintiff must show that he can perform the essential functions of the job at the time of the employment decision or in the immediate future. *Id.*

Qualex argues that Lamb was not qualified for the ADS position because he was unable to work full-time. The validity of this argument turns on whether or not full-time work is an essential function of the job of ADS. An ADS provides "in-the-field" training and sales support to retail one-hour photo processing sites in an assigned geographic territory. One of the primary responsibilities of an ADS is to build and maintain a strong working relationship between Qualex and its retailers. In order to do so, an ADS is expected to make at least one sales call per month on each of its retail stores. If, in a given month, an ADS has called on each store within the territory, he or she is then expected to make repeat calls to each account because training and service are expected to be performed continually. The amount of time spent on a sales call varies depending on the skills of the employees of a particular store and can range anywhere from two to as long as five or even eight hours.

An ADS is also responsible for responding to photo lab emergencies experienced by its retailers. Consequently, customer service demands can come up unexpectedly and must be acted upon promptly and fulfilled quickly. The manual given to ADS employees sets out multiple duties of an ADS that are to be performed at the site of the retail stores. The duties and responsibilities of an ADS include not only the making of routine store visits but being present when needed on short notice or demand. The ADS is to conduct in-store sales training on a routine basis as turnover or the observed need dictates. If the store employees in charge of the photo lab resign, the ADS must be available promptly to train substitute employees. If the store is having a grand opening the ADS must be there on that day for the entire day.

According to Lisa Rice, the position of ADS has to be filled on a full-time basis in order to provide the requisite level of service to all accounts in a sales territory. As she testified, if the retail store needs the ADS to be present on a given day, as, for example, to train the replacement for a resigned employee, it does not suffice to respond that the ADS does not work on that particular day. Consequently, Qualex has never employed an ADS on a part-time basis.

Lamb concedes that at the time of the employment decision which gave rise to this lawsuit, he could not perform full-time work. He also agrees that Qualex maintained that it was not possible to fill the ADS position on a part-time basis. In fact, Lamb contends that Qualex refused to fill the position on a part-time basis as an accommodation to him.

In an effort to rebut evidence produced by Qualex demonstrating that full-time employment is essential to the ADS position, Lamb contends that the ADS position could be performed on a part-time basis. In support of this contention, Lamb points out that he was replaced by an employee who was assigned only twenty-nine stores in the Norfolk area, a geographic location much smaller than that assigned to Lamb prior to his medical leave. Lamb claims that he could have completed the work assigned to his replacement on a part-time basis inasmuch as it involved calling on approximately 60% of the number of stores Lamb called on as a full-time employee.

Lamb's assertion is unfounded. Lamb's replacement, Sara Steele, testified that she worked approximately 50 to 60 hours per week calling on her twenty-nine stores during September. Prior to his medical leave, Lamb had been unable to make the requisite number of sales calls to each of his stores. Indeed, based upon required weekly reports prepared by Lamb and submitted to his supervisor, some of which were never received though requested, Lamb called on only 48 stores in his territory during his ten months of employment. Excluding the first two months of December and January while he was in training and excluding the time thereafter that he was off work due to illness or medical disability, Lamb was available for work for a total of about three months. Those three months consist of some 1-2/3 months from February and March after excluding a week's illness in early February and, following his hospitalization and recuperation from April 2 to

May 6, another 1-1/3 months that he worked between May 7 and June 17 when he took short-term medical disability. Coverage of only 48 stores during that three months indicates that Lamb, even while working full-time, was making only about one-third of the sales calls expected of him.

Lamb further contends that, even if he could not work full-time upon his return to Qualex, the ability to work full-time may not be considered by the court in determining whether he could perform the essential functions of his job as an ADS. In support of this contention, Lamb cites to the 1999 EEOC Guidance Statement which criticizes the decisions of courts that have characterized attendance as an essential job function and states that "[a]ttendance . . . however, is not an essential function as defined by the ADA because it is not one of 'the fundamental job duties of the employment position.'" *See* Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, No. 915.002, at 16 n.61 (March 1, 1999). According to Lamb, the EEOC's directive must be given "controlling weight" and requires us to depart from the rationale of *Tyndall* and *Halperin* in which we recognized that reliable attendance is an essential job function.

Lamb overstates the consideration which must be afforded the EEOC directive. *See Shafer v. Preston Mem'l Hosp. Corp.*, 107 F.3d 274, 279 n.5 (4th Cir. 1997), *abrogated on other grounds*, *Bailey ex rel. Baird v. Rose*, 192 F.3D 462 (4th Cir. 1999) ("'[W]hile not controlling upon the courts by reason of their authority, the EEOC interpretive guidelines do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'") (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986); *Williams v. Channel Master Satellite Sys.*, 101 F.3d 346, 349 n.2 (4th Cir. 1996), *cert. denied sub nom.*, *Williams v. Avnet, Inc.*, 520 U.S. 1240 (1997) (although courts and litigants may resort to EEOC interpretive guidelines for guidance, they are not controlling upon the courts by reason of their authority); *see also Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 99 (1995) ("Interpretive rules . . . do not have the force and effect of law, and are not accorded that weight in the adjudicatory process.").

Based upon the reasoning of *Tyndall* and *Halperin*, we find that the district court properly concluded that Lamb was not able and thus not

"qualified" to perform the essential functions of his job inasmuch as he could not return to work on a full-time basis as required to carry out the duties and responsibilities of an ADS.

### 3. *Reasonable Accommodation*

Even if a plaintiff is unable to perform an essential function of the job, the court "must nevertheless determine whether the person could do the job with reasonable accommodation." *Myers*, 50 F.3d at 282; *Martinson*, 104 F.3d at 687. The ADA specifically states that "'reasonable accommodation' may include . . . job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position." 42 U.S.C.A. § 12111(9)(B). An accommodation is reasonable "unless [the employer] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C.A. § 12112(b)(5)(A). The burden of identifying an accommodation that would allow a qualified individual to perform the job rests with the plaintiff, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable. *Halperin*, 128 F.3d at 197. Once the plaintiff has met his burden of proving that reasonable accommodations exist, the employer may present evidence that the plaintiff's requested accommodation imposes an undue hardship on the employer. 42 U.S.C.A. § 12112(b)(5)(A); *Willis v. Conopco, Inc.*, 108 F.3d 282, 284-86 (11th Cir. 1997).

Lamb argues that his proposed return to work on a part-time basis represents a reasonable accommodation that would have allowed him to perform the essential functions of his job as an ADS. The district court found, and we agree, that Lamb failed to show that the accommodation he requested was reasonable.

For his accommodation, Lamb requested that Qualex create a third ADS position in Virginia and carve out from another employee's territory the Richmond area accounts for which Lamb had previously been responsible. The ADA does not, however, require an employer to create a new position as an accommodation to a disabled employee. *Barnett v. U.S. Air, Inc.*, 157 F.3d 744, 751 (9th Cir. 1998); *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1187 (6th Cir. 1996); *White v. York Int'l Corp.*, 45 F.3d 357, 362 (10th Cir. 1995).

Lamb further requested that he be allowed to work in the newly created position on a part-time basis. Where, however, an employer has no part-time jobs available, a request for part-time employment is not a reasonable one. *Terrell v. US Air*, 132 F.3d 621, 626 (11th Cir. 1998) ("Although part-time work, as the statute and regulations recognize, may be a reasonable accommodation in some circumstances (particularly where the employer has part-time jobs readily available), we hold that [the employer] was not required to create a part-time position for [p]laintiff. . . ."); *Whitbeck v. Vital Signs, Inc.*, 934 F. Supp. 9, 16 (D.D.C. 1996), *rev'd on other grounds*, 116 F.3d 588 (D.C. Cir. 1997) ("This type of accommodation by an employer, providing an entirely new part-time position for a disabled employee, courts have found is not required by the ADA."). It is clear that Qualex had no part-time ADS positions.

Lamb's request that Qualex create a new part-time ADS job for him was unreasonable and would impose an undue hardship on Qualex.[3] Lamb has adduced no evidence to raise a geniune issue of material fact that part-time work for him was a reasonable accommodation. In light of this, Lamb failed to carry his burden of identifying a reasonable accommodation.

## B.   *Retaliation*

Section 503(a) of the ADA prohibits retaliation by an employer against an employee who enforces his rights under the ADA. *See* 42 U.S.C.A. § 12203(a). To prevail on a retaliation claim, the employee must first establish a prima facie case of retaliation by a preponderance of the evidence. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). To do so, a plaintiff must prove that (1) he engaged in protected activity; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action. *Id.* If the plaintiff satisfies this burden, then his employer

---

[3]Moreover, the necessity of furnishing an automobile and a laptop computer for an ADS who would use those items only on a part-time basis would impose further substantial cost on Qualex for which it could receive only a partial return.

must articulate a legitimate non-retaliatory reason for its action. *Id.* Should the employer do so, then the plaintiff must prove by a preponderance of the evidence that the employer's articulated reason is pretext and that the real reason for the employer's action was to retaliate against him for having taken the protected action of requesting an accommodation. *Id.*

The district court found that Lamb's request for part-time work and his subsequent termination by Qualex fulfilled the first element, protected activity, and the second element, adverse action, of his prima facie case of retaliation. Lamb, however, disputes the district court's finding that he failed to establish the third element of his prima facie case, a causal connection between his request for part-time work and his discharge.

The district court concluded that Lamb failed to come forward with sufficient proof of a causal connection inasmuch as the only evidence offered by Lamb was to the effect that the decision by Robert Golian to terminate Lamb was made the same day that Golian received the letter of Dr. Lakhani that indicated that Lamb could return to work only on a part-time basis. According to Lamb, this evidence alone is sufficient to satisfy the causal connection element of his prima facie case. A temporal connection between the protected conduct and the adverse employment action may be sufficient to present a genuine factual issue on retaliation. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999). Indeed, "[a] close temporal connection between the two events 'is generally enough to satisfy the third element of the prima facie test.'" *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796-97 (7th Cir. 1997). The evidence here shows that Golian first became aware of Lamb's request to return to work on a part-time basis on September 9, 1997, and that he decided to terminate Lamb on September 25, 1997, within hours of receiving Lamb's September 22, 1997, medical release which stated that he could work only part-time. From this evidence, we find that Lamb sufficiently demonstrated the causal connection needed to establish his prima facie case.

Having found that Lamb has established a prima facie case of retaliation, we next determine whether Qualex articulated a legitimate non-retaliatory reason for Lamb's discharge. Qualex asserts that it

fired Lamb for legitimate business purposes. We find that the evidence supports this assertion. Lamb's territory was divided in half and filled by two individuals while he was on leave. Lamb's territory was already suffering from inattention prior to June 17, 1997. With Lamb expected to be on short-term medical disability as allowed up to 90 days, Qualex followed the patently prudent course of seeing that his territory was covered and his customers served. At the end of that 90-day period, Lamb remained unable to return to any level of work until he was finally released on the 97th day by his doctor on September 22, 1997, but only for part-time work. In view of the absence of the availability of a part-time job and the inadequacy of a part-timer to handle the array of essential duties and responsibilities of an ADS, coupled with the inability of Lamb to return to full-time work, Qualex plainly articulated a legitimate non-retaliatory reason for Lamb's discharge.

Even during the overall three months when Lamb was understood to be able to work his stores full-time, he was visiting them only on a part-time basis. Qualex reacted responsibly when Lamb took medical disability in June by taking the measures necessary to maintain its customer base in his territory. Qualex imposed upon its out of state ADSs to leave their posts in an effort to take up the slack in Virginia while it trained 2 new ADSs to serve in Lamb's area. As already established, Lamb, unable to resume full-time work, was, after 97 days off the job, released for part-time work only. The essential duties of an ADS require one's full-time availability in order to service and retain the store accounts. With no realistic prospect that Lamb would be able to resume work full-time, it was neither unreasonable nor retaliatory for Qualex to terminate him. Lamb has simply failed to produce relevant evidence to the contrary. Indeed, it was less than candid of Lamb to offer to do part-time work when, without disclosure to Qualex, he had already asked the Social Security Administration to declare him disabled as of a date six months earlier.

Lamb contends that the reasons proffered by Qualex for terminating him were pretext and that the record contains ample evidence to create a genuine issue of fact as to whether the real reason he was terminated was in retaliation for seeking reasonable accommodation. Viewing the evidence in the light most favorable to Lamb, we are unable to conclude that Lamb created a question of fact on pretext.

Lamb offered no evidence from which a reasonable juror could conclude that the compelling reasons articulated by Qualex for terminating him, as outlined above, were pretext.

Lamb having failed to raise a genuine issue of material fact, we find that the district court properly granted summary judgment in favor of Qualex on Lamb's retaliation claim.

IV.

For the stated reasons, the decision of the district court is

*AFFIRMED*.