Fred MANCINI, Plaintiff—Appellant,

v.

UNION PACIFIC RAILROAD
COMPANY, Defendant—
Appellee.

No. 02–36151.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 2, 2004.

Decided April 23, 2004.

Reed W. Larsen, Esq., Cooper and Larsen, Chartered, Pocatello, ID, for Plaintiff–Appellant.

Jeffery J. Devashrayee, Esq., Salt Lake City, UT, for Defendant–Appellee.

Before: LEAVY, WARDLAW, and GOULD, Circuit Judges.

MEMORANDUM *

■ Fred Mancini appeals the district court's grant of summary judgment to Union Pacific Railroad Company ("UPRR") on his Americans with Disabilities Act ("ADA") claims. Mancini worked as a signalman for UPRR and suffers from epilepsy, though medication completely controls his seizures.[1] On appeal, Mancini argues

---

* This disposition is inappropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Although Mancini submitted an affidavit stating that his condition is merely "well controlled," this declaration was not part of the summary judgment record before the district court. Accordingly, we may not consider it in

that the district court erred in determining that between June 1, 2001, and October 1, 2001, he was neither "actually disabled" under the ADA nor "regarded as having a disability" by UPRR. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

■ "Because the existence of a 'disability' is a gateway requirement," *EEOC v. United Parcel Serv., Inc.*, 306 F.3d 794, 797 (9th Cir.2002), our consideration of Mancini's ADA claim involves three inquires: (1) "we determine whether [Mancini's epilepsy] is a physical impairment"; (2) "we identify the life activity on which [Mancini] relies, and we determine whether this activity is a major life activity"; and (3) "we determine whether the impairment substantially limits the major life activity." *Fraser*, 342 F.3d at 1038. Our analysis is guided by the general principal that a disability determination under the ADA is an individualized inquiry. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 199, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Accordingly, "[w]e do not decide whether every [epileptic] is . . . disabled," *Fraser*, 342 F.3d at 1039, but rather we solely address whether Mancini was disabled during the relevant four-month period. Because neither party disputes that epilepsy is a physical impairment or that Mancini relies upon a major life activity in advancing his ADA claim, we focus on the "substantially limits" prong of the disability inquiry.

EEOC regulations state that a person is "substantially limited" if he is "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). In determining whether a major life activity is "substantially limiting," we consider the "effectiveness of [any] mitigating measure at preventing or ameliorating the underlying impairment." *Fraser*, 342 F.3d at 1039. "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482–83, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Thus, "[epilepsy] does not render an individual disabled per se for purposes of the [ADA]." *Vinson v. Thomas*, 288 F.3d 1145, 1159 (9th Cir. 2002), *cert. denied*, 537 U.S. 1104, 123 S.Ct. 962, 154 L.Ed.2d 772 (2003).

Mancini's epilepsy is corrected by mitigating measures. The manifestations of his epilepsy, *i.e.*, the seizures, are "totally controlled" through the consistent use of medication. Moreover, Mancini's four-month suspension stemmed from his supervisor's determination that Mancini could not perform the requirements of his job under the temporary work restrictions imposed by his physicians, not due to a perceived risk of seizures. Accordingly, during that temporary suspension Mancini was not substantially limited in a major life activity. *See* 29 C.F.R. § 1630.2(j)(3)(i) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."); *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 540 (9th Cir.1997) (finding that restrictions on a specific job function did not "preclude [plaintiff] from engaging

---

our appraisal of Mancini's ADA claim. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir.2003) ("In reviewing a summary judgment, we are limited to the . . . evidence available to the court at the time the motion was made.") (internal quotation omitted), *cert. denied*, —— U.S. ——, 124 S.Ct. 1663, 158 L.Ed.2d 358, 2004 WL 102834 (2004).

in an entire class of jobs"). Thus, at least during the time-period in question, Mancini was not disabled under 42 U.S.C. § 12102(2)(A). *See Sutton,* 527 U.S. at 483–84, 119 S.Ct. 2139 (stating that it would be "contrary to both the letter and the spirit of the ADA" if "[an epileptic] whose illness does not impair his or her daily activities [was] considered disabled simply because he or she has [epilepsy]").

Nor did UPRR "regard" Mancini as disabled. *See* 42 U.S.C. § 12102(2)(C) (defining a disability as "being regarded as having such an impairment"). As the Supreme Court explained in *Sutton:*

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. *In both cases, it is necessary that a covered entity entertain misperceptions about the individual*—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting. These misperceptions often 'resul[t] from stereotypic assumptions not truly indicative of . . . individual ability.'

527 U.S. at 489, 119 S.Ct. 2139 (quoting 42 U.S.C. § 12101(7)) (emphasis supplied).

The record reveals that UPRR did not possess a mistaken belief that Mancini's impairment was substantially limiting. On the contrary, UPRR's actions illustrate that it consistently and, as previously noted, correctly regarded Mancini not to be disabled. During the relevant time period, UPRR conditionally permitted Mancini to return to service, but his supervisor deter-

mined that Mancini could not perform the functions of a signalman in light of the restrictions imposed by his doctors, *i.e.,* no (1) driving, (2) climbing poles or ladders, (3) operating power saws, (4) working with heavy machinery, or (5) operating power hand tools. Significantly, each of these restrictions was merely temporary and UPRR returned Mancini to service—without restrictions—on October 1, 2001.

"As with real impairments, . . . a perceived impairment must be substantially limiting and significant." *Thompson,* 121 F.3d at 541 (internal quotation marks omitted). To be construed as substantial, "[t]he impairment's impact must also be permanent or long term." *Toyota,* 534 U.S. at 198, 122 S.Ct. 681. That UPRR only temporarily held Mancini out of work evidences that it did not regard his impairment to be substantially limiting. *See id.* And having never considered Mancini's impairment to be "substantially limiting," UPRR could not have mistakenly regarded him as disabled. *See id.* Mancini's § 12102(2)(C) claim, therefore, fails because UPRR neither mistakenly believed "that [he] ha[d] a substantially limiting impairment that [he did] not have [nor mistakenly believed] that [he] ha[d] a substantially limiting impairment when, in fact, the impairment [wa]s not so limiting." *Sutton,* 527 U.S. at 489, 119 S.Ct. 2139.

AFFIRMED