**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-2079**

WHITNEY C. STEPHENSON,

              Plaintiff – Appellant,

        v.

PFIZER, INCORPORATED,

              Defendant – Appellee.

------------------------------

DISABILITY RIGHTS NORTH CAROLINA; NATIONAL DISABILITY RIGHTS
NETWORK; NATIONAL EMPLOYMENT LAWYERS ASSOCIATION; EQUAL
EMPLOYMENT OPPORTUNITY COMMISSION,

              Amici Supporting Appellant,

EQUAL EMPLOYMENT ADVISORY COUNCIL; CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA; NATIONAL FEDERATION OF INDEPENDENT
BUSINESS SMALL BUSINESS LEGAL CENTER,

              Amici Supporting Appellee.

Appeal from the United States District Court for the Middle
District of North Carolina, at Greensboro.  Thomas D. Schroeder,
District Judge.  (1:13-cv-00147-TDS-LPA)

Argued:  October 27, 2015              Decided:  March 2, 2016

Before NIEMEYER, KING, and SHEDD, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

---

**ARGUED**: Robert Mauldin Elliot, ELLIOT MORGAN PARSONAGE, PLLC, Winston-Salem, North Carolina, for Appellant. Stephanie E. Lewis, JACKSON LEWIS P.C., Greenville, South Carolina, for Appellee. Barbara L. Sloan, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C. for Amicus Curiae. **ON BRIEF**: Daniel C. Lyon, ELLIOT MORGAN PARSONAGE, PLLC, Winston-Salem, North Carolina, for Appellant. Jonathan A. Roth, JACKSON LEWIS P.C., Greenville, South Carolina, for Appellee. P. David Lopez, General Counsel, Carolyn L. Wheeler, Acting Associate General Counsel, Jennifer S. Goldstein, Acting Assistant General Counsel, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus U.S. Equal Employment Opportunity Commission. Lisa Grafstein, Katherine Slager, DISABILITY RIGHTS NORTH CAROLINA, Raleigh, North Carolina, for Amici Disability Rights North Carolina, National Disability Rights Network and National Employment Lawyers Association. Kathryn Comerford Todd, Warren Postman, U.S. CHAMBER LITIGATION CENTER, INC., Washington, D.C., for Amicus Chamber of Commerce of the United States of America; Rae T. Vann, NORRIS, TYSSE, LAMPLEY & LAKIS, LLP, Washington, D.C., for Amicus Equal Employment Advisory Council; Karen R. Harned, Elizabeth Milito, NATIONAL FEDERATION OF INDEPENDENT BUSINESS SMALL BUSINESS LEGAL CENTER, Washington, D.C. for Amicus National Federation of Independent Business Small Business Legal Center.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Whitney C. Stephenson appeals from the district court's award of summary judgment to Pfizer, Incorporated, in an action under the Americans with Disabilities Act (the "ADA"). Stephenson — who worked as a pharmaceutical sales representative for Pfizer until November 2011, just after an eye disorder rendered her unable to operate an automobile — contends that the company violated the ADA by summarily denying her request for a driver. Pfizer maintains that driving an automobile is an essential function of Stephenson's job that she must perform personally, and the court awarded summary judgment to Pfizer on that basis. As explained below, we vacate and remand because summary judgment was not warranted.

I.

A.

In February 2013, Stephenson filed her complaint in the Middle District of North Carolina, alleging that Pfizer had contravened the ADA by denying a reasonable accommodation that would have allowed her to return to her position as a pharmaceutical sales representative. The summary judgment record — which includes

3

depositions, affidavits, and exhibits — provides the factual
background of this dispute.[1]

1.

Stephenson began her career as a pharmaceutical sales
representative in 1984, after graduating from Duke University.
For nearly thirty years, Stephenson worked for Pfizer or its
predecessor Warner-Lambert as a sales representative in and around
Winston-Salem, North Carolina. That position required her to make
in-person presentations about pharmaceutical products, with the
goal of convincing medical professionals — generally primary care
physicians — to prescribe those products for their patients.[2]

Stephenson was, by all accounts, an exemplary salesperson.
Early in her career, in 1985, she was named "Rookie of the Year"
by her employer. Fifteen years later, Pfizer inducted Stephenson

---

[1] Because we are reviewing an award of summary judgment to
Pfizer, we are obliged to accept and recite the relevant facts in
the light most favorable to Stephenson. See Rhoads v. FDIC, 257
F.3d 373, 386 (4th Cir. 2001).

[2] Pfizer's Winston-Salem, North Carolina district, where
Stephenson worked, was bounded by the municipalities of Mount Airy,
Madison, Kernersville, and Mocksville, within Surry, Rockingham,
Forsyth, and Davie counties. Approximately 2300 physicians
possess active licenses within those counties, and nearly ninety
percent of those doctors are in Forsyth County, predominately in
Winston-Salem. See N.C. Med. Bd., Licensee Search,
http://www.ncmedboard.org/ (follow "Start Search" hyperlink; then
select "Physician" license type and "Active" license status; then
search by county) (last visited Feb. 16, 2016). The two major
medical centers in the district — Wake Forest Baptist and Novant
Health Forsyth — are in Winston-Salem, where Stephenson resides.

into its "Hall of Fame," an honor bestowed on fewer than a hundred sales representatives in the company's history. Stephenson subsequently earned recognition in national sales contests and was named a "Pfizer Master" in honor of her sales and leadership achievements.

Stephenson attributed her success as a Pfizer sales representative to fastidious preparation for sales meetings. She stayed on top of current medical research and developments in the pharmaceutical industry. Using her thorough understanding of various diseases, her company's products, and the products of competitors, Stephenson prepared clear and concise presentations that accurately conveyed complex information to physicians. Stephenson's dedication and know-how earned her credibility with doctors, who in turn were more likely to prescribe Pfizer's products. As a result, Stephenson generated millions of dollars in sales each year for Pfizer and consistently ranked as one of its top sales representatives in North Carolina.

Because her job required meetings with physicians in their offices, Stephenson did not maintain an office at a Pfizer facility. Instead, Pfizer provided her with a car to travel from her home in Winston-Salem to sales meetings. Stephenson spent most of the workday in meetings with doctors. She usually worked about ten hours a day, with eight of those away from home and "on

the road." See J.A. 78.[3] Although Stephenson could not perform her job without meeting with medical professionals in person, she understood her job to require travelling, and driving an automobile was her method of doing so.

Stephenson's job description says nothing about driving an automobile or even possessing a driver's license.[4] It does, however, outline Stephenson's position with Pfizer with substantial specificity, including the following:

> [Sales representatives] may have a variety of roles, such as the responsibility for sales targets and physician relationships within a specific geography . . . [;] must demonstrate a strong understanding of necessary disease states and possess a solid ability to communicate necessary technical, scientific, and product and disease management information to customers . . . [;] [and] will provide the most current information pertaining to Pfizer products and their approved indications in a manner which will ensure the appropriate use of these products and achieve the business potential of the territory.

J.A. 521. According to her job description, a sales representative must possess business savvy, be familiar with sales reporting software, and have a college degree or equivalent experience in pharmaceutical sales. A Pfizer sales representative must also

---

[3] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

[4] Stephenson's direct supervisor, district manager Thomas Rulon, produced and authenticated Stephenson's job description. His affidavit explained that the job description was "accurate as to the qualifications and essential functions required of sales representatives" from 2004 through 2011. See J.A. 515.

6

demonstrate several "core competencies": good judgment; accountability; self-motivation; effective problem solving; other sales-related skills focused on building relationships with physicians and executing effective sales strategies; and commitment to Pfizer's "culture, values and mission." See id. at 521-22.

2.

In October 2008, Stephenson developed an eye disorder called Non-Arteritic Anterior Ischemic Optic Neuropathy ("NAION"), which affects the flow of blood to one or both of the optic nerves. As a result, Stephenson lost sixty percent of the vision in her left eye. She was nevertheless able to continue working, without accommodations, for the next three years. By October 2011, however, Stephenson developed NAION in her right eye and lost sixty percent of the vision in that eye. Due to her combined vision loss, Stephenson could no longer drive an automobile. Shortly thereafter, in November 2011, Stephenson went on disability leave, which is her present status with Pfizer.

On October 27, 2011, Stephenson asked Pfizer to accommodate her vision problems. More specifically, she sought a driver to take her to sales meetings, asked for magnifying software for her computer, and requested magnifying tools to assist her in reading documents. While awaiting Pfizer's response, Stephenson and her husband researched and received pricing estimates from potential

7

drivers and shuttle services that could transport her to sales meetings. Stephenson forwarded some of that information to Pfizer, but for about a month heard nothing regarding her accommodations request.

By a November 28, 2011 email, Pfizer granted Stephenson's requests for computer software and reading tools but rejected her request for a driver. Pfizer did not suggest that the cost of hiring or retaining a driver was a factor in the denial, but maintained that the denial was based on Pfizer's conclusions that driving an automobile was an essential function of her sales position and that hiring a driver would be "inherently unreasonable." See J.A. 593. Explaining those conclusions, Pfizer pointed out that it would face "significant increased risk and liability related to vehicular accidents, workers compensation, and misappropriation of and/or lost drug samples." Id.

Over the next several months, Stephenson repeated her request for a driver in phone calls and emails with Pfizer managers. Each time, she received the same answer: driving is an essential function of her sales position and providing a driver for her would be an unreasonable accommodation. Revealingly, Pfizer's North Carolina regional business director, Thomas Salamone, advised Stephenson in early 2012 that Pfizer was concerned about "setting precedent in case a future non-performing employee were to ask for something similar," explaining, "Not everyone is a Whitney

8

Stephenson." See J.A. 481. Instead of discussing an accommodation that could get Stephenson back to work meeting with doctors, Pfizer directed her to other positions within the company that did not require travelling. Stephenson declined to pursue any other positions, however, believing that her skills were best suited to the sales representative job in which she had excelled for decades.

On April 25, 2012, Stephenson filed a charge of disability discrimination with the Equal Employment Opportunity Commission (the "EEOC"). In November 2012, the EEOC issued a notice informing Stephenson of her right to sue. These court proceedings ensued.

B.

By memorandum opinion and order of September 8, 2014, the district court awarded summary judgment to Pfizer. See Stephenson v. Pfizer, Inc., 49 F. Supp. 3d 434 (M.D.N.C. 2014) (the "Opinion"). The Opinion concluded that the essential functions of Stephenson's sales representative position with Pfizer were not genuinely in dispute and that driving an automobile was essential to her job. The bases for those conclusions included: Pfizer's assertion that driving is essential; Stephenson's statement that she spent "the bulk" of her day travelling between doctors' offices; Stephenson's acknowledgement that she could not perform her job unless she was able to travel to doctors' offices; and Pfizer's statement that all of its North Carolina sales representatives drove themselves. See id. at 440. The Opinion

9

identified a number of statutory and regulatory factors that guide an essential-function inquiry and concluded that the balance of those factors favored Pfizer's argument that driving was essential to Stephenson's position.

Notably, the Opinion recited that "[t]here appears to be a genuine dispute as to whether Pfizer's posted job descriptions for sales representative positions explicitly require a job candidate to be able to drive." Stephenson, 49 F. Supp. 3d at 440. The Opinion did not, however, mention Stephenson's job description, which says nothing about driving.[5] In any event, the Opinion discounted the dispute, reasoning that "the absence of a purported essential function from a posted job description is not dispositive." See id.

The Opinion also explained that the ADA does not require an employer to reassign, reallocate, or adjust essential functions. As a result, the Opinion concluded that Stephenson's request for

---

[5] Apart from Stephenson's job description, the discovery process revealed several job postings for sales positions at Pfizer. At least five job postings in 2014 for Pfizer sales positions say nothing about driving or possessing a driver's license. In contrast, two other 2014 postings for Pfizer sales positions include requirements for job applicants to "have a valid US driver's license and a driving record in compliance with company standards." See J.A. 493, 496. Pfizer also relied on an undated document titled "Essential job functions for a Pfizer Professional Healthcare Representative." That document states that a sales representative should "be able to safely operate a motor vehicle in accordance with company policy and applicable driving rules and regulations." See id. at 454.

a driver was unreasonable as a matter of law, and that the only accommodation Stephenson could seek from Pfizer was reassignment to a different position. Because Stephenson had not identified any vacant positions she was willing to accept, she had failed, according to the Opinion, to show that Pfizer had contravened the ADA. The district court thus awarded summary judgment to Pfizer.

Stephenson timely noted this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review de novo a district court's award of summary judgment, viewing the evidence and the reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See Wilson v. Dollar Gen. Corp., 717 F.3d 337, 342 (4th Cir. 2013). Summary judgment is not appropriate unless there is no genuine dispute of material fact, such that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a).

III.

A.

1.

The ADA bars an employer from discriminating "against a qualified individual on the basis of disability." See 42 U.S.C. § 12112(a). Such discrimination can occur when an employer fails to accommodate the known disability of a qualified employee. See id. § 12112(b)(5). In order for an employee to be a "qualified individual" under the ADA, she must be able to "perform the essential functions of the employment position," either "with or without reasonable accommodation." Id. § 12111(8). A reasonable accommodation, in turn, "is one that 'enables a qualified individual with a disability to perform the essential functions of a position.'" Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 580 (4th Cir. 2015) (quoting 29 C.F.R.

12

§ 1630.2(*o*)(1)(ii)).  Under the ADA, an employer has "a good-faith duty to engage with [its employee] in an interactive process to identify a reasonable accommodation."  Id. at 581 (internal quotation marks omitted).

Crucially, the ADA does not require an employer to reassign any of the essential functions of a disabled employee, nor does it require an employer to hire additional employees to perform an essential function.  See Martinson v. Kinney Shoe Corp., 104 F.3d 683, 687 (4th Cir. 1997).  Rather, the employer must accommodate a disabled employee only when an accommodation "would enable the employee to perform all of the essential functions of her position."  Jacobs, 780 F.3d at 581.  Such an accommodation can include job restructuring, modifications to a work schedule, reassignment to a different position, the use or modification of equipment that enables the individual to perform her job, or even "the provision of qualified readers or interpreters."  See 42 U.S.C. § 12111(9)(B).

We have construed the ADA to require a plaintiff pursuing a failure-to-accommodate claim to satisfy four elements:  (1) that she had a disability within the meaning of the statute; (2) that her employer had notice of the disability; (3) that she could perform the essential functions of her job with a reasonable accommodation; and (4) that her employer declined to make such an accommodation.  See Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345

13

(4th Cir. 2013). If the plaintiff proves the elements of her failure-to-accommodate claim, the employer can yet avoid liability by showing "that the proposed accommodation will cause undue hardship in the particular circumstances." Reyazuddin v. Montgomery Cty., 789 F.3d 407, 414 (4th Cir. 2015) (internal quotation marks omitted).

2.

The third element of a failure-to-accommodate claim requires, in part, an inquiry into the essential functions of the relevant position. In the context of the ADA, "[n]ot all job requirements or functions are essential." Jacobs 780 F.3d at 579. Instead, the functions of a job that are essential include only those "that bear more than a marginal relationship to the job at issue." Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 213 (4th Cir. 1994) (internal quotation marks omitted). Identifying the essential functions of a job requires a factual inquiry that is guided by several statutory and regulatory factors. See Jacobs, 780 F.3d at 579.

The ADA identifies two factors that inform whether a particular function is essential to a position. First, the employer's judgment of the essential functions must be considered. See 42 U.S.C. § 12111(8). Second, if a written job description has been prepared ahead of advertising or interviewing candidates

14

for a position, that description "shall be considered evidence of the essential functions of the job." See id.[6]

The applicable regulations provide additional guidance on an essential-function inquiry. First, the regulations define the essential functions as "the fundamental job duties of the employment position the individual with a disability holds or desires," excluding "the marginal functions of the position." See 29 C.F.R. § 1630.2(n)(1). Second, the regulations identify seven factors that are "evidence of whether a particular function is essential":

- "the employer's judgment as to which functions are essential";

- "written job descriptions prepared before advertising or interviewing applicants for the job";

- "the amount of time spent on the job performing the function";

- "the consequences of not requiring the incumbent to perform the function";

---

[6] In pertinent part, the applicable ADA provision concerning the employer's judgment and the job description specifies that

consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

See 42 U.S.C. § 12111(8).

15

- "the terms of a collective bargaining agreement";

- "the work experience of past incumbents in the job";

- "the current work experience of incumbents in similar jobs."

See id. § 1630.2(n)(3)(i)-(vii).[7]  None of those seven factors is dispositive, and not all of them will be relevant in every case. See, e.g., Jacobs, 780 F.3d at 579 (considering some but not all regulatory factors); Martinson, 104 F.3d at 687 (same). Furthermore, the list of factors is not exhaustive. See 29 C.F.R. § 1630.2(n)(2)(3) (explaining that proof of essential functions includes, "but is not limited to," evidence identified by regulatory factors).  Thus, for example, a written job description prepared after advertising or interviewing applicants for the job could be relevant evidence of whether a particular function is essential.  See Basith v. Cook Cty., 241 F.3d 919, 928 (7th Cir.

---

[7] The regulations also provide three examples of situations where a function can be essential:

- the job exists specifically to perform the function;

- the small size of the workforce requires all employees to be able to perform the function;

- the employee is hired for her expertise in performing the highly specialized function.

See 29 C.F.R. § 1630.2(n)(2)(i)-(iii).

16

2001) (using job description created after hiring as evidence of essential functions).

B.

With respect to the third and fourth elements of Stephenson's failure-to-accommodate claim — whether she could perform her position's essential functions with a reasonable accommodation and whether Pfizer declined to make such an accommodation — the parties dispute whether the ability to drive an automobile is an essential function of Stephenson's sales position with Pfizer. Pfizer contends that driving is essential, while Stephenson maintains that travelling — not driving — is the function at issue. Resolving that dispute is critical to Stephenson's ADA claim because, under the statute, an employer must accommodate only an employee who is "qualified," that is, able to perform her position's essential functions with or without an accommodation. See 42 U.S.C. § 12111(8).

If driving is an essential function of her sales position, Stephenson — who cannot drive no matter the accommodation — is not qualified under the ADA and her claim fails as a matter of law. On the record before us, however, summary judgment is not warranted because there is a genuine dispute of material fact as

17

to whether the essential function at issue is driving or travelling. That factual dispute is for a jury to resolve.[8]

IV.

Pursuant to the foregoing, we vacate the district court's award of summary judgment and remand for such other and further proceedings as may be appropriate.

<u>VACATED AND REMANDED</u>

---

[8] There is also a genuine dispute of material fact as to the alternative basis proffered by Pfizer for upholding the judgment in its favor: that, even if driving a car is not essential to Stephenson's job, hiring or retaining a driver would be an unreasonable accommodation.

18